RECEIVED
BY MAIL
NOV 0 4 2019
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

# Exhibits

SCANNED
NOV 04 2019
U.S. DISTRICT COURT MPLS

**Exhibit A**

Affidavit from Charlie Laymon that asserts that the Department of Commerce, by way of Investigator John Billington, persuaded Laymon to testify against Gustafson Sr. in that Sr. made the order for arson. Amber Hawkins, the prosecutor intimidated Laymon in that Laymon would do 15 years if he did not cooperate. Dated 4-28-2019

STATE OF MINNESOTA AFFIDAVIT IN SUPPORT.
COUNTY OF CARLTON.

I,CHARLIE LAYMON,STATE NOW THAT I AM THE AFFIANT OF THE FOLLOWING AFFIDAVIT IN SUPPORT, AND THAT FOLLOWING IS TRUE AND CORRECT UNDER ALL PENALTIES FOR THE STATE OF MINNESOTA AND FOR THE UNITED STATES OF AMERICA.

AFFIANT STATES NOW:

1.AFFIANT STATES THAT ONE KNOWN TO HIM AS TROY NEUBERGER CAME TO HIM AT THE RESIDENCE WHERE AFFIANT RESIDED 39th STREET, BRYANT AVENUE,NORTH MLPS.MN.PRESENT WAS AFFIANT TROY NEUBERGER AND ONE KNOWN AS JIMMY LINEMAN.
NEUBERGER REQUESTED THAT THIS AFFIANT ACCOMPANY HIM TO THE GAS STATION LOCATED AT PENN AVENUE,34th STREET NORTH MLPS.MN.

2.AFFIANT STATES THAT TROY NEUBERGER & THIS AFFIANT THEN WENT TO A GAS STATION LOCATED AT PENN AVENUE,34th STREET NORTH MLPS,MN. AT THE GAS STATION AFFIANT STATES TROY NEUBERGER PURCHASED A AMOUNT OF APPROXIMATELY 3.0 GALLONS INWHICH HE MIXED INTO AN OLD PAINT CONTAINER 1/2 FULL OF USED MOTOR OIL.AFFIANT AND NEUBERGER THAN PROCEEDED TO THE ADDRESS OF 3117 GIRARD AVENUE NORTH ,MLPS.MN.AT APPROXIMATELY 11:00am,ON 4/20/2006.UPON ARRIVAL AT THE RESIDENCE TROY NEUBERGER ENTERED THE RESIDENCE CARRYING THE CONTAINER OF FLAMMABLE MATERIALS IN HAND AND WENT INTO THE BASEMENT AREA AND STARTED TO SPLASH THE UNDER FLOOR AND CEILING AREA OF THE BASEMENT WITH EXCELLERANT AND WENT BACK UPSTAIRS THROUGHOUT THE HOUSE SPREADING THE EXCELLERANT TOP TO BOTTOM.AFFIANT STATES THAT NEUBERGER THAN WENT TO THE GARAGE AND RETREVED A MEANS TO SET THE FIRE UTILIZING A RAG OF SOME SORT.ONCE NEUBERGER STEPPED BACK INTO THE HOUSE AND STARTED THE FIRE AFFIANT AND NEUBERGER LEFT THE RESIDENCE DIRECTLY AND RETURNED TO AFFIANTS RESIDENCE WHERE JIMMY LINEMAN WAS STILL WAITING.

3.AFFIANT STATES THAT AT NO TIME DURING,THROUGHOUT, BEFORE OR AFTER DID HE EVER RECIEVE ORDERS FROM JOSEPH GUSTAFSON SR. TO COMMIT ANY CRIMINAL ACTIVITY WHAT SO EVER, OR FROM ANY GUSTAFSON FAMILY WHAT SO EVER.AFFIANT STATES THAT TROY NEUBERGER MADE THE OPEN STATEMENT THAT HE WAS DOING THESE ACTIONS UPON HIS OWN FREE WILL AND NO ONE WAS INSTRUCTING HIM TO TAKE CRIMINAL ACTIONS OF ANY KIND.

4.AFFIANT STATES THAT HE WAS CHARGED WITH MOTOR VEHICLE THEFT FOR THE PICK UP USED IN THE COMMISION OF THE ARSON AT GIRARD AVENUE, AFFIANT WAS HOUSED IN ANOKA COUNTY JAIL, ANOKA ,MN.AFFIANT DID EXECUTE A 18 MONTH PRISON SENTENCE AT MN.DEPARTMENT OF CORR. AFFIANT WAS LATER COMMITTED TO THE ANOKA COUNTY JAIL FOR MOTOR VEHICLE DRIVING VIOLATIONS.THE TERM WAS 1-YEAR WITH DRIVING PRIVELDGES CANCELLED.AFFIANT WAS TRANSFERED TO THE SHERBOURNE COUNTY REGIONAL CORRECTIONS CENTER FOR HOUSING PURPOSES.

STATE OF MINNESOTA
COUNTY OF CARLTON.

AFFIDAVIT IN SUPPORT

AFFIANT STATES FURTHER NOW:

5. AFFIANT WAS APPROACHED AT THE ANOKA COUNTY JAIL BY INV.JOHN BILLINGTON ON THE APPROXIMATE DATE(UNKNOWN NOW) AND WAS THAN QUESTIONED ABOUT THE INCIDENT INVOLVING TROY NEUBERGER AND THE BURNING OF THE HOUSE GIRARD AVENUE ON 4/20/2006.AT THIS TIME AFFIANT INFORMED INV.BILLINGTON THAT AFFIANT DID NOT KNOW WHAT HE WAS TALKING ABOUT.UPON TRANSFER TO THE SHERBOURNE COUNTY FACILITY,INV.BILLINTON INTERVIEW THIS AFFIANT AGAIN AT WHICH TIME THE STATEMENT WAS GIVEN THAT TROY NEUBERGER AND THIS AFFIANT IN FACT BURNED DOWN THE HOUSE AND NO DIRECTIVE WAS EVER GIVEN BY ANY MEMBER OF THE GUSTAFSON FAMILY MEMBERS OR BY JOSEPH GUSTAFSON SR. ALSO THIS WAS A TAPED STATEMENT ON RECORDED RECORD AT THE SHERBOURNE COUNTY FACILITY.

6. AFFIANT COMPLETED THE TERM OF INCARCERATION AT THE SHERBOURNE COUNTY FACILITY AND WAS THEN TRANSFERED TO THE HENNEPIN COUNTY JAIL IN DOWN TOWN MLPS,MN.WHERE AFFIANT WAS GIVEN ANOTHER 1YEAR SENTENCE FOR FURTHER MOTOR VEHICLE VIOLATIONS. AND THEN WAS TRANSFERED TO THE HENNEPIN COUNTY WORK HOUSE,DURING THE PERIOD OF INCARCERTION AT THE WORK HOUSE AFFIANT WAS EXCORTED TO THE HENNEPIN COUNTY COURT HOUSE BY COUNTY TRANSPORT DIVISION. AT THE COURT HOUSE THIS AFFIANT WAS APPROACHED BY INV.JOHN BILLINTON AND ANOTHER UNKNOWN INVESTIGATOR,AT THIS TIME AFFIANT STATED I HAVE ALREADY AFFORED YOU WITH MY STATEMENT, AT THIS TIME THE HENNEPIN COUNTY ASSISTANT DISTRICT ATTORNEY ENTERED THE ROOM AND MADE THE STATE--MENT"MR.LAYMON" HOW WOULD YOU LIKE TO BE DOING 15-YEAR WITH BOTH OF YOU'RE BUDDIES?(IN REFERENCE TO JOSEPH D. GUSTAFSON JR. & JOSEPH GUSTAFSON SR)"STATEMENT BY MS.AMBER HAWKINS. AFFIANT THAN STATED THAT HE WOULD NOT LIKE TO DO THAT,HAWKINS FURTHER MADE THE STATEMENT THAT SHE WOULD LIKE TO PUT THEM AWAY FOR LIFE IF SHE COULD BUT THAT SHE WANTED THEM OFF THE STREETS REGARDLESS.SHE THAN ORDERED INV. JOHN BILLINGTON TO TAKE OVER THE INTERVIEW ONCE AGAIN BY SAYING TO HIM. YOU KNOW WHAT TO DO! iIN REFERENCE TO WORK IT OUT.AFFIANT THAN AGREED TO CHANGE HIS STATEMENT TO READ THAT JOSEPH GUSTAFSON SR. DID IN FACT ORDER THIS AFFIANT TO BURN DOWN THE HOUSE AT 3117 GIRARD AVENUE NORTH MLPS.MN.THAN AFFIANT WAS ORDERED TO PROCEED AND TESTIFY AGAINST HIS CONSTITUTIONAL RIGHTS NOT TO SELF INCRIMINATE.NO ATTORNEY WAS EVER AFFORDED TO THIS AFFIANT FOR ADVICEMENT.AFFIANT STATES HE WAS ORDERED TO TESTIFY.

AFFIANT SAYTH NO MORE NOW:

I DECLARE UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES THAT THE FOREGOING IS TRUE AND CORRECT .28 U.S.C. § 1746

RESPECTFULLY SUBMITTED.

Charles R Laymon

CHARLES R.LAYMON.#195991.
MCF.ML.1000.Lake Shore Drive
MOOSE LAKE,MN.55767.

4 /28 /2019.

**Exhibit B**

Affidavit from Greg Chamberlain's personal care assistant states that Mr. Chamberlain never used cocaine, and that he never sold Charles Pratt cocaine. Gustafson asserts that Chamberlain was never charged with 3rd degree sales while Gustafson was charged with aiding and abetting 3rd degree sales, and convicted of 3rd degree sales, for Chamberlain selling Pratt the cocaine. Dated 10-16-2019

Oct. 16th, 2019

To whom it may Concern;

I am Gregory Chamberlain's PCA he asked me to write this letter:

I Gregory Chamberlain did not ever sell cocaine to Charles Pratt or anyone else for that matter, nor do I use it.

I have a disability and have been on a pain Contract with my Doctor for over 15 years and I get regular drug tests to stay on the contract.

[signature]

# Exhibit C

Audio forensics, from Immune Records, that show the primary lynch-pin tape recording of a controlled buy of a gun was altered throughout the recording.

IMMURE RECORDS
Audio Restoration and Forensics

1740 130th Avenue NE
Blaine, MN, 55449
763-862-5992
www.ImmureRecords.com
Nathan@immurerecords.com

3/2/2017

Mr. Joseph Gustafson,

This letter is regarding case number 27-CR-11-5352 EX10 CD audio you provided for audio authenticity checking. At your request we examined the audio and found many discrepancies in the recording. The audio you sent us was on a finalized audio CD. First we had to extract the audio using Sony Sound Forge 9.0. This in no way affected the original content of the recording. The reason for the extraction was to load it into our software for analysis. The analysis was done using Izotope Rx3 Advanced. No editing or enhancement was done by us. We used Izotope Rx3 advanced for analyzing the spectrogram and for playback listening.

It is in my professional opinion that the audio cd 27-CR-11-5352 EX10 is not an authentic recording. There are many indications in the audio that this has been edited and/or manipulated. I have attached a list of times in question. In these times located in the audio there are many blank sections, back ground noise inconsistencies, and indications of speech editing.

Sincerely,

Nathan Clark
Audio Engineer/Forensics Audio Examiner

Exhibit H

Case No. 27-CR-11-5352 EX10 Audio Analysis Times In Question

Time unit: HMS

| Section | Start Time | End Time | Explanation |
|---|---|---|---|
| Region 1 | 00:00:13.34371882 | 00:00:30.64829932 | Section Spliced Together |
| Region 2 | 00:00:38.50000000 | 00:00:38.64845805 | Loss Of Background Noise |
| Region 3 | 00:00:39.55165533 | 00:00:40.99997732 | Loss Of Background Noise |
| Region 4 | 00:01:06.29421769 | 00:01:06.41741497 | Loss Of Background Noise |
| Region 5 | 00:01:18.85000000 | 00:01:18.87952381 | Loss Of Background Noise |
| Region 6 | 00:01:37.80000000 | 00:01:38.99997732 | Blank Spot |
| Region 7 | 00:02:02.04170068 | 00:02:02.29802721 | Blank Spot |
| Region 8 | 00:02:18.96816327 | 00:02:20.30004535 | Blank Spot |
| Region 9 | 00:08:09.15083900 | 00:08:10.76761905 | Inconsistent Background |
| Region 10 | 00:08:19.16625850 | 00:08:20.10931973 | Inconsistent Background |
| Region 11 | 00:08:22.51492063 | 00:08:28.54945578 | Inconsistent Background |
| Region 12 | 00:08:46.13585034 | 00:08:46.46444444 | Blank Spot |
| Region 13 | 00:08:50.07609977 | 00:08:51.12941043 | Inconsistent Speech |
| Region 14 | 00:09:12.67439909 | 00:09:12.84297052 | Inconsistent Speech |
| Region 15 | 00:09:48.04684807 | 00:09:48.82285714 | Inconsistent Background |
| Region 16 | 00:12:40.31183673 | 00:12:54.44943311 | Inconsistent Background |
| Region 17 | 00:13:00.62369615 | 00:14:53.44086168 | Background Music Drops Out. Acros Entire Conversation |
| Region 18 | 00:14:53.81319728 | 00:14:53.96079365 | Blank Spot |
| Region 19 | 00:14:55.96199546 | 00:14:56.04551020 | Section Of Frequency Missing |
| Region 20 | 00:15:01.45294785 | 00:15:59.09133787 | Speech And Background Noise Do Not Line Up |

H-2

| | | | |
|---|---|---|---|
| Region 21 | 00:16:00.99129252 | 00:17:48.99997732 | Hum Does Not Line Up Or Show Indications In Background |
| Region 22 | 00:18:03.27285714 | 00:18:03.36591837 | Break In Speech |
| Region 23 | 00:18:14.74909297 | 00:18:14.84442177 | Gap In Recording |
| Region 24 | 00:18:30.49782313 | 00:18:30.80006803 | Gap In Recording |
| Region 25 | 00:20:12.60000000 | 00:20:14.30356009 | Blank Spot And Missing Frequencies |
| Region 26 | 00:21:15.11727891 | 00:21:15.15528345 | Gap In Recording |
| Region 27 | 00:22:29.20009070 | 00:22:30.43056689 | Blank Spot And Missing Frequencies |
| Region 28 | 00:22:46.05342404 | 00:22:46.09993197 | Gap In Recording |
| Region 29 | 00:22:53.00000000 | 00:22:53.12190476 | Gap In Recording |
| Region 30 | 00:23:25.20009070 | 00:23:26.43523810 | Sound From TV Does Not Line Up With Speech |
| Region 31 | 00:23:32.70462585 | 00:23:32.84102041 | Gap In Recording |
| Region 32 | 00:23:50.14192744 | 00:23:50.22575964 | Gap In Recording |
| Region 33 | 00:23:58.24725624 | 00:23:58.36845805 | Gap In Recording |
| Region 34 | 00:24:06.40000000 | 00:24:07.35138322 | Loss Of Background Noise |
| Region 35 | 00:24:11.56569161 | 00:24:11.69580499 | Gap In Recording |
| Region 36 | 00:24:12.16251701 | 00:24:20.14108844 | Inconsistent Background |
| Region 37 | 00:24:21.03811791 | 00:24:21.14643991 | Gap In Recording |
| Region 38 | 00:24:22.13832200 | 00:26:40.93514739 | Very Inconsistent Background Drop Outs And Erratic Speech Starts And Stops |
| Region 39 | 00:25:17.68102041 | 00:25:17.93591837 | Speech Edit |
| Region 40 | 00:26:15.04337868 | 00:26:15.18444444 | Gap In Recording |
| Region 41 | 00:26:22.19650794 | 00:26:22.32242630 | Gap In Recording |
| Region 42 | 00:26:28.18185941 | 00:26:28.32278912 | Gap In Recording |
| Region 43 | 00:26:55.33546485 | 00:26:55.46616780 | Gap In Recording |
| Region 44 | 00:27:13.45834467 | 00:27:13.50353741 | Gap In Recording |

H-3

| | | | |
|---|---|---|---|
| Region 45 | 00:27:19.24056689 | 00:27:19.40006803 | Gap In Recording |
| Region 46 | 00:27:51.04950113 | 00:27:51.18111111 | Gap In Recording |
| Region 47 | 00:28:06.75204082 | 00:28:08.58428571 | Speech Edit |
| Region 48 | 00:28:15.28027211 | 00:28:17.30392290 | Gap In Recording |
| Region 49 | 00:29:10.91687075 | 00:29:19.50002268 | Loss Of Background Noise |
| Region 50 | 00:29:15.94285714 | 00:29:16.07662132 | Drop Out In Speech |
| Region 51 | 00:29:23.00009070 | 00:29:44.03909297 | Very Inconsistent Background Drop Outs And Erratic Speech Starts And Stops |
| Region 52 | 00:31:43.12414966 | 00:32:00.69197279 | Inconsistent Background Noise Singing Birds |
| Region 53 | 00:32:34.40000000 | 00:32:34.46897959 | Gap In Recording |
| Region 54 | 00:32:59.23997732 | 00:32:59.26240363 | Gap In Recording |
| Region 55 | 00:33:07.93260771 | 00:33:07.97857143 | Gap In Recording |
| Region 56 | 00:33:36.76058957 | 00:33:36.78122449 | Gap In Recording |
| Region 57 | 00:33:53.34011338 | 00:34:03.50002268 | Very Inconsistent Background Drop Outs And Erratic Speech Going Into New Recording |
| Region 58 | 00:34:39.39272109 | 00:34:39.50002268 | Gap In Recording Edit |
| Region 59 | 00:34:57.04124717 | 00:34:57.13775510 | Gap In Recording |
| Region 60 | 00:35:24.19612245 | 00:35:24.49993197 | Skip In Audio |
| Region 61 | 00:35:30.54185941 | 00:35:30.59575964 | Gap In Recording |
| Region 62 | 00:35:37.02780045 | 00:35:37.07405896 | Gap In Recording |
| Region 63 | 00:35:39.53342404 | 00:35:39.60015873 | Gap In Recording |
| Region 64 | 00:35:40.96870748 | 00:35:41.03612245 | Gap In Recording |
| Region 65 | 00:35:51.28113379 | 00:35:51.30748299 | Gap In Recording |
| Region 66 | 00:35:52.19990930 | 00:35:52.24319728 | Gap In Recording |
| Region 67 | 00:35:53.98845805 | 00:35:54.03342404 | Gap In Recording |
| Region 68 | 00:36:00.05015873 | 00:36:00.11639456 | Gap In Recording |

| | | | |
|---|---|---|---|
| Region 69 | 00:36:02.19990930 | 00:36:02.28777778 | Gap In Recording |
| Region 70 | 00:36:09.42027211 | 00:36:09.47190476 | Gap In Recording |
| Region 71 | 00:36:33.99990930 | 00:36:34.35707483 | Inconsistent Background |
| Region 72 | 00:36:56.45494331 | 00:36:56.49993197 | Gap In Recording |
| Region 73 | 00:37:00.54369615 | 00:37:00.60006803 | Gap In Recording |
| Region 74 | 00:37:05.69995465 | 00:37:05.78539683 | Gap In Recording |
| Region 75 | 00:38:18.71188209 | 00:38:18.91049887 | Gap In Recording |
| Region 76 | 00:38:23.13616780 | 00:38:23.71891156 | Gap In Recording |
| Region 77 | 00:38:26.04997732 | 00:38:26.14229025 | Gap In Recording |
| Region 78 | 00:38:37.30412698 | 00:38:37.41036281 | Gap In Recording |
| Region 79 Recording | 00:39:31.89183673 | 00:39:33.31934240 | Female Voice Not Consistent With |
| Region 80 | 00:40:10.73315193 | 00:40:10.82970522 | Gap In Recording |
| Region 81 | 00:40:16.45394558 | 00:40:24.99997732 | Missing Section |
| Region 82 | 00:41:51.42718821 | 00:41:51.60015873 | Gap In Recording |
| Region 83 | 00:42:00.15258503 | 00:42:00.21893424 | Gap In Recording |
| Region 84 | 00:42:09.38442177 | 00:42:09.49777778 | Gap In Recording |
| Region 85 | 00:42:20.78018141 | 00:42:20.94201814 | Gap In Recording |

Following that article is the article dated 10/12/2018 shows that "More Than 30 Cases to be Dismissed After Officer Travis Serafin Doctored Search Warrant." There were two warrants issued in the case the article refers to and, according to the article, "They'd soon learn the second search warrant was forged and that Serafin had apparently doctored the original to make it appear it was broader than Judge Quam had authorized."

The third article dated 12/18/2018 shows that a veteran investigator left the Eden Prairie Police Department shortly after a drug dealer was released from prison because the officer lied under oath about a search warrant.

All of these articles are in connection to the Metro Strike Task Force, the main evidence producing body against Gustafson in this instant §2254 claim, and should be considered in the light of it being *more likely than not* that Gustafson is showing his *actual innocence* because if the main testimony against Gustafson is shown to be un-credible it would seem to petitioner that no reasonable juror would vote to convict Gustafson beyond a reasonable doubt.

Back to previous page

ProQuest

document 1 of 1

# Police victims awarded $840K: The payouts, ranging from $300 to $75,000, were part of settlement in suit over Gang Strike Force.

Furst, Randy.**Star Tribune; Minneapolis, Minn.** [Minneapolis, Minn]24 July 2012: A.1.

**startribune.com**

## Abstract

[...]the settlement agreement specifically includes no admission of guilt or liability by any of the parties associated with [the Strike Force], including Brooklyn Park," the statement said.

## Full Text

More than $840,000 was awarded Monday to 96 victims of illegal searches, seizures and use of excessive force by the now-defunct Metro Gang Strike Force, including a dozen juveniles who were targeted by a Brooklyn Park police officer.

The scandal-ridden gang unit, shut down by the Department of Public Safety three years ago this month, broke through people's doors without justification, seized property without authorization and injured people who were not suspects, according to reports by Mark Gehan, a St. Paul attorney appointed as special master in the case.

The awards, ranging from $300 to $75,000, conclude the main phase in the 2010 settlement of a $3 million class-action lawsuit that allowed victims of the Strike Force's misdeeds to apply for compensation, but only if they had had property taken.

The remaining money, expected to approach $2 million after appeals are heard and Gehan is paid, will be used statewide for training of law enforcement officers on issues ranging from racial sensitivity to the seizure of property.

Gehan sifted through 216 claims and rejected 120 of them; 56 individuals have indicated they will appeal the denials to U.S. District Judge Joan Ericksen, who presided over the case.

The Strike Force, a multi-jurisdictional police unit, collapsed in July 2009 after a series of allegations, including misplaced evidence, mishandled funds and raids on people's homes where property was improperly seized.

At least 12 of Gehan's awards, totaling $138,000, went to targets of a special Strike Force "gang surge" operation from May 15 to July 30, 2008. All involved were juveniles at the time, so their names were not released.

Referring to the surge, Gehan wrote that Strike Force officers, "and particularly Greg Burstad, conducted an intensive intelligence gathering operation in the cities of north Minneapolis, Brooklyn Park, Crystal and Robbinsdale."

"Many of the claimants state they were handcuffed and assaulted," Gehan continued. "Some state they were taken to jail and then released without charges. They all complained that they were searched or that the automobiles they were in were searched and that personal property was inspected and often taken."

Gehan said he was satisfied that in almost every claim connected to the surge, at least one person was a member of a gang, either directly or tangentially.

But, he added, the complaints "in the aggregate" were so similar, "they present a compelling basis" to believe them.

"The conduct described by claimants goes well beyond an investigative 'stop and frisk,'" he wrote.

Gehan awarded $25,000 to a person who was a juvenile at the time, saying Burstad "used excessive force in the actual physical arrest of claimant." He said medical records documented the case, one of seven instances in which the youth was harassed.

In another case, in which Gehan also awarded $25,000, he said Burstad and others repeatedly harassed a youth, confiscating cellphones, kicking one youth, choking another and forcing their way into the claimant's parents home at midnight.

Burstad, a Brooklyn Park officer, is now a sergeant.

In a statement released late Monday, the Brooklyn Park police defended Burstad and praised his record with the department, noting that the allegations against him have never been substantiated in court.

"In fact, the settlement agreement specifically includes no admission of guilt or liability by any of the parties associated with [the Strike Force], including Brooklyn Park," the statement said. "To this date not one complaint or allegation related to Sgt. Burstad has ever been filed with our department by parties of the lawsuit."

The largest award, $75,000, went to a Minneapolis woman who was targeted in a police raid on Aug. 1, 2006.

"Claimant says that many officers rushed into the house and that she was put to the floor and repeatedly kicked in the face," Gehan's report said. A Strike Force attorney said that if there were any injuries, they were caused by a Minneapolis SWAT team that entered first.

The claimant submitted statements from three people who saw her badly bruised face right after the warrant was executed, along with a report from Fairview Southdale Hospital, where she went on Sept. 1. She said the officers apparently went to the wrong address.

Gehan, former president of the Minnesota State Bar Association, was also special master in the state's 1998 lawsuit against the tobacco industry. Strike Force attorneys cannot appeal Gehan's findings, according to the settlement terms.

Joe Flynn, an attorney for the Strike Force and the cities and counties whose officers served on it, said Gehan's findings "demonstrate the limited nature of the wrongdoing." He said that many of the awards "were simply for failure to return property which would have been otherwise subject to the forfeiture process."

Jason Johnston, an attorney with Zimmerman Reed, which filed the suit, said, "There was a select group of officers who abused their position.

"I think the process has been successful," he said.

But Phil Fishman, an independent attorney representing victims in the class-action suit, said he was dismayed that the Hennepin County Attorney Mike Freeman did not call a grand jury in the case.

"The tragedy of the Strike Force," he said, "is you have police who ... were common thugs and they were never brought to justice."

Freeman said in 2010 that he would not prosecute Strike Force members. He said major obstacles included the group's substandard handling of records and evidence and the refusal of 29 former officers and employees to talk to investigators.

Randy Furst - 612-673-4224

METRO GANG STRIKE FORCE HISTORY

1997: Metro Gang Strike Force is created, joining law enforcement officers and supervisors from various agencies.

April 2009: Six Strike Force members attend a conference on gangs in Hawaii. Expenses were paid for with seized money.

May 2009: Legislative auditor's report criticizes the unit's operations, saying that it had mishandled seized cars and property and that more than $18,000 in seized funds could not be accounted for.

July 2009: Strike Force abolished amid more allegations of misconduct. Class-action suit filed.

August 2009: A second investigation finds Strike Force members took home property. Hearings lead to new laws tightening rules on police task forces.

December 2010: Court approves lawsuit settlement, awarding $3 million for victims and officer training.

April 2012: Lawyers submit 216 claims.

Credit: RANDY FURST; STAFF WRITER

(Copyright 2012 Minneapolis Star Tribune)

## Details

| | |
|---|---|
| Subject | Settlements & damages;<br>Litigation;<br>Search & seizure |
| People | Gehan, Mark; Burstad, Greg |
| Title | Police victims awarded $840K: The payouts, ranging from $300 to $75,000, were part of settlement in suit over Gang Strike Force. |
| Author | Furst, Randy |
| Publication title | Star Tribune; Minneapolis, Minn. |
| First page | A.1 |
| Publication year | 2012 |
| Publication date | Jul 24, 2012 |
| Section | NEWS |
| Publisher | Star Tribune Media Company LLC |
| Place of publication | Minneapolis, Minn. |
| Country of publication | United States, Minneapolis, Minn. |
| Publication subject | General Interest Periodicals--United States |
| ISSN | 08952825 |
| Source type | Newspapers |
| Language of publication | English |

| | |
|---|---|
| Document type | News |
| ProQuest document ID | 1027604741 |
| Document URL | https://search-proquest-com.content.elibrarymn.org/docview/1027604741?accountid=45111 |
| Copyright | (Copyright 2012 Minneapolis Star Tribune) |
| Last updated | 2017-11-19 |
| Database | Global Newsstream |

Database copyright © 2019 ProQuest LLC. All rights reserved. Terms and Conditions

LOCAL

# Payouts reveal brutal, rogue Metro Gang Strike Force

Settlement for victims includes $6,000 for toddler kicked in head.

**By Randy Furst (http://www.startribune.com/randy-furst/10644886/)** Star Tribune |

**AUGUST 5, 2012 — 5:15PM**

A toddler, not yet 2 years old, was kicked in the head by a Metro Gang Strike Force officer and his crib was destroyed during a botched drug raid. The government's payout to the child: $6,000.

A Lincoln Navigator SUV, seized by the Strike Force, was returned to the owner 18 months later, with 20,000 more miles on it. Payout to the owner: $25,000.

In other raids, officers improperly seized a blender, class rings, an ice auger and a stump digger. One man lost some Twins baseball hats he said were autographed by Joe Mauer. His compensation: $2,000 if the caps are not returned.

The stories and payouts to 96 victims of the now-defunct Strike Force, cited in 600 pages of documents released last week in a class-action lawsuit, provide the most detailed picture yet of an out-of-control police squad, and put a price on every wrongful seizure, unjustified punch or dubious raid.



DAVID JOLES – STAR TRIBUNE

Joe Neeland is getting a settlement for a 2008 Strike Force raid, but he's still upset.

The $3 million suit was filed on July 30, 2009, less than two weeks after the scandal-ridden unit, made up of officers from metro agencies, was shut down by then-Public Safety Commissioner Michael Campion. The collapse of the Metro Gang Strike Force revealed widespread illegal behavior by officers and prompted new laws and policies designed to improve oversight and accountability of police in Minnesota.

Two people nearly deported to Mexico in 2008 may have been the biggest winners. Strike Force police searched them at the Minneapolis impound lot, found no drugs but took $100 from them and turned them over to immigration authorities. Deportation proceedings were canceled last October and they won special visas because they were Strike Force crime victims. They were awarded $33,500 in the suit.

"It was a tremendous outcome," said Randy Hopper, the attorney who won the settlement in the civil rights suit.

The payouts were issued last week by attorney Mark Gehan who was appointed special master by the U.S. District Court.

Gehan cited 15 people he believed were victims of excessive force and nine whose residences were torn apart during Strike Force raids, mostly between 2006 and 2009, records show. He awarded compensation to four people who lost flat screen TVs and 11 whose vehicles were seized.

Gehan rejected 120 claims, including one from a man who alleged the Strike Force took $100,000 from his backpack in 2003.

He awarded about $840,000 to Strike Force victims and ordered various property returned. Fifty-six people began filing appeals Friday of Gehan's decisions. U.S. District Judge Joan Ericksen will issue decisions in those cases.

The payouts come from the League of Minnesota Cities Insurance Trust, which insured the Strike Force. About $2 million will be used for training law enforcement statewide on proper seizure methods and racial and cultural sensitivity.

Some who won awards were accused of trafficking in illegal drugs or associated with gangs. Some of the raids did recover illegal drugs and lead to arrests.

Gehan did not state the overall criteria he used in calculating the payouts, but it was apparent that some Strike Force behavior particularly offended him. "I do not see how a plasma television or an ice auger constitutes evidence of a crime," wrote Gehan in the case of Joseph Kujawa, who had both items seized and was awarded $25,000. The Strike Force found 2 pounds of marijuana in his house, although he was apparently never convicted for it, Gehan said. Kujawa was later convicted and sentenced to 10 years in federal prison on methamphetamine charges.

Some raids led to collateral damage. In July 2006, the Strike Force kicked in the door of a St. Paul house, conducted a search and took a dog owned by Mohamed Aboubaker.

Gehan reviewed photos of the raid, writing, "It is quite clear that the residence was 'trashed.' It goes beyond the 'disarray' described in the defendants' response."

Gehan awarded Aboubaker $5,000 for property damage and $225, the cost of retrieving his dog from the pound.

In August 2006, Strike Force officers and the Minneapolis police SWAT unit broke into a residence, based on an informant's information about the sale of cocaine. They found a small amount of marijuana, but no cocaine or two drug dealers they were looking for. An officer tried to kick a woman, but instead kicked her toddler. A photo showed a bruise on his forehead. A $289 crib was destroyed.

In its defense, the Strike Force called it "a high-risk raid and that officers are permitted to use force commensurate with the danger," Gehan wrote.

"I am unable to discern why it would be necessary to kick claimant's mother," Gehan wrote, issuing a $6,000 award.

"Is that all?" Joe Neeland, 63, asked this week after told by a reporter he'd been awarded $5,000, plus $3,000 if authorities can't find the computer and peripherals the Strike Force took in 2008.

They also took a 42-inch flat screen TV, a class ring on a necklace and 60 pain pills prescribed after his back operation. He was never arrested.

Seated in his kitchen at the Little Earth of United Tribes housing project in Minneapolis, Neeland said, "I was so mad. I had that ring since 1968 when I graduated from Park Rapids Area High School."

A few blocks away, Zenaido Rivera Garcia, lead plaintiff in the suit, said he never expected to win. He and Veronica Nunez Guevara, his sister-in-law, had gone to the Minneapolis impound lot in 2008 to retrieve her 1991 Nissan Maxima.

They were patted down by the Strike Force who called them "illegals" and took $100 from them, according to their claim.

Gehan said police never gave him a reason for stopping the two Mexican immigrants. "It is inescapable that it was because they were Hispanic," he wrote.

The Strike Force handed the two over to Immigration and Customs Enforcement, which jailed them for five days and began deportation proceedings. The two found support from immigration attorneys Phil Fishman and Khanh Nguyen and from Hopper.

Gehan ordered Rivera Garcia be paid $15,500 and Nunez Guevara, $18,000.

Under a special provision in immigration law that rewards crime victims who cooperate with prosecutors, both have won visas and Rivera Garcia's wife, Gloria Nunez Guevara, Veronica's sister, also won a visa. "Justice has been served," Rivera Garcia said in an interview through a translator. "Many times the police acted wrongfully and thankfully through God, I used great attorneys to help us and the Hispanic people get justice."

Randy Furst • 612-673-4224

---

**Randy Furst** is a Star Tribune general assignment reporter covering a range of issues, including tenants rights, minority rights, American Indian rights and police accountability.

rfurst@startribune.com 612-673-4224 randyfurst

**Chosen For You**

Local

Sports

LOCAL

# Minnesota cities, counties paid $60.8M in police misconduct claims in past decade

From 2007 to 2017, Minnesota jurisdictions made at least 933 payouts to citizens for alleged misconduct. And they're on the rise.

**By Randy Furst (http://www.startribune.com/randy-furst/10644886/) and MaryJo Webster (http://www.startribune.com/maryjo-webster/303594441/)** Star Tribune

**APRIL 15, 2018 — 7:43AM**

On-duty misconduct by Minnesota law enforcement officers has become an expensive proposition.

Over the past 11 years, at least $60.8 million has been paid out statewide to people who have made misconduct allegations, according to data compiled by the Star Tribune.

From 2007 to 2017, jurisdictions in Minnesota have made at least 933 payouts to citizens for alleged misconduct. And they're on the rise. The average has grown from about 50 payouts per year to around 100.

In many cases, government entities have made the payouts [illegible]ements without going to trial or acknowledging wrongdoing. Most payouts are f[illegible]w thousand dollars for accusations ranging from being unjustly sprayed by a che[illegible] irritant to an unjustified arrest. The smallest, issued in 2009 by the city of Eagan, w[illegible]r $21.

## Payouts by police

Displays the number of payouts and total money paid by the selected Minnesota law enforcement agency.

▶ ALL AGENCIES

Payment Count

Total Paid




934

$60,792,470




STAR TRIBUNE FILE

Minneapolis was the behemoth when it came to payouts over police misconduct, with nearly $21 million over the past 11 years — 35 percent

However, in 11 payouts totaling $1 million or more, individuals were often seriously injured or killed by law enforcement officers. The year 2017 was the second most expensive for government entities statewide, with $8.4 million in payouts. It was exceeded only in 2011, when the total included $3.6 million to settle claims and a class-action suit against the Metro Gang Strike Force, which was shut down in 2009.

Payouts over misconduct allegations are more common in the metro area. Outstate Minnesota, which accounts for just over one-third of the state's population, accounts for a fifth of what's paid out.

The suicide of Kathryn Schneider in a Koochiching County jail in 2014 led to a $2 million settlement, the largest outstate payout involving sworn officers.

Minneapolis was the behemoth when it came to payouts, with nearly $21 million over the past 11 years — 35 percent of the state total, compared to 8 percent for St. Paul. Four of the 11 payouts of $1 million or more involving law enforcement conduct came from Minneapolis, including the largest: $4.5 million paid in 2007 to former police officer Duy Ngo, shot by another officer who mistook him for a fleeing suspect.

However, Minneapolis payouts may be trending downward. There were half as many payouts in 2017 compared to two years earlier, and about $424,000 dispensed last year was the smallest amount since 2008.

Still, a single case could skew the numbers. The fatal shooting of Justine Ruszczyk Damond by officer Mohamed Noor in 2017 could set a record, perhaps $10 million or more, legal observers say.

Minneapolis City Attorney Susan Segal said changes in the culture of policing — including use-of-force policies — likely contributed to the decrease. Police Chief Medaria Arradondo declined to comment, referring questions to the city attorney.

### Mostly minorities

Many of the alleged victims over the 2007-17 period are minorities. Five of the six largest payouts were to people of color, and the Metro Gang Strike Force payouts were made mostly to Latinos and blacks, according to Randy Hopper, the attorney who brought the class-action suit.

A common thread for the surge in payouts is the proliferation of surveillance cameras, bodycams, patrol car cameras and cellphones, which can sometimes provide an alternative narrative to the written reports filed by police.

"I think video plays a big role" in the increase in misconduct allegations, said Teresa Nelson, legal director of the American Civil Liberties Union of Minnesota.

St. Paul Police Chief Todd Axtell noted that the growing national "conversation and awareness of police-community relations has made people more aware of what police interactions and arrests should look like. "When the interactions don't meet the standard of what the community should expect, people are more likely to report that conduct," he said.

St. Paul has a population of 302,000, compared to 413,000 in Minneapolis, but has paid out far fewer claims — 68, compared to 195 payouts in Minneapolis — since 2007. St. Paul's $5 million in payouts is about one-fourth the Minneapolis total.

When an enforcement action requires the use of force, according to Axtell, St. Paul says it must satisfy three criteria: "Were the actions reasonable, necessary and done with respect?" His command staff reviews every use-of-force incident weekly.

The surge in payouts statewide does not surprise former Minneapolis Police Chief Tony Bouza, who says not enough has been done to rein in police behavior. He blames mayors who he believes take a hands-off approach to police policy. "It's a national problem," he said.



*Aaron Lavinsky - Star Tribune*

*Robert Bennett is a go-to attorney in Minnesota police misconduct cases. He keeps copies of checks related to them stuck in a mounted walleye.*

Robert Bennett has become the go-to attorney in major law enforcement conduct cases in Minnesota. He represents John Ruszczyk, the father of Justine Damond. Of the 11 misconduct cases of $1 million or more, Bennett and his Minneapolis law firm have won eight of them. They are responsible for about half of the $60 million paid out for officer misconduct; that does not include another $20 million for misconduct by medical staff in Minnesota jails.

Bennett represented Duy Ngo and also won $3 million for the family of David Smith (http://www.startribune.com/may-25-minneapolis-pays-3-million-in-police-misconduct-case/208912661/), whose death was captured on video as two officers held him down at the Minneapolis downtown YMCA, leading to asphyxiation.

Last summer, Bennett won a $3 million payout in connection with the shooting death of Philando Castile (http://www.startribune.com/philando-castile-family-reaches-3m-settlement-in-death/430840813/) by St. Anthony officer Jeronimo Yanez during a traffic stop. The Castile settlement for police misconduct allegations was the largest for a Twin

Cities suburb. It was only slightly larger than a 2015 payout by the city of Brooklyn Park of $2.85 million, also engineered by Bennett's firm, that went to Shoua Yang. In 2014, Yang was shot three times by a probationary police officer after a family party.

Not every payout is seven figures. Gary Sauber, who operated a body shop in Buffalo Lake, won a $25,000 settlement in 2010 after he was arrested and jailed for felony theft for refusing to return a pickup until the owner paid her repair bill. The charge was reduced to misdemeanor theft and then dismissed.

Deontrae Morehead got $10,000 from the city of St. Paul after he was sprayed with a chemical irritant by police at a 2015 party. A misdemeanor charge of obstructing the legal process was later dismissed.

Although several Minnesota cities, including Minneapolis and St. Paul, are self-insured, most get their insurance through the League of Minnesota Cities Insurance Trust, with assets of $450 million, said trust administrator Dan Greensweig. While the trust pays much of the money in settlements, it takes out insurance itself to cover part of the huge claims.

Cities may feel pressure to settle rather than face a public trial, said Michele Bratcher Goodwin, a law professor at the University of California-Irvine and a former University of Minnesota professor.

But Axtell said a settlement doesn't mean officers' actions were inappropriate or outside policy. It can be less costly for the city to make a payout than to take the case to court.

Andy Skoogman, executive director of the Minnesota Chiefs of Police Association, said the data reinforce the need for more training.

He said that last year lawmakers approved legislation mandating that one-third of the 48 hours of training that an officer must receive every three years must be devoted to handling conflict mediation, cultural diversity and crisis intervention.

The Minnesota Peace Officer Standards and Training Board reimburses agencies just over $300 annually for training for every officer in Minnesota, but as a result of legislative action last year, the amount was raised to just under $1,000, he said. "The investment by the state will hopefully result in fewer payouts and fewer violent encounters between police and citizens," said Skoogman.

Bennett remains skeptical. Training "does not appear to have any significant impact on lessening instances of police misconduct," he said. "The training needs the buy-in of the officer rank-and-file if it is to have any impact at all."

---

**Randy Furst** is a Star Tribune general assignment reporter covering a range of issues, including tenants rights, minority rights, American Indian rights and police accountability.

rfurst@startribune.com 612-673-4224 randyfurst

**MaryJo Webster** is the data editor for the Star Tribune. She teams up with reporters to analyze data for stories across a wide range of topics and beats.

maryjo.webster@startribune.com 612-673-1789 MaryJoWebster

WEST METRO

# Hennepin County Attorney's Office likely to dismiss 32 cases after Eden Prairie detective falsified search warrant

Travis Serafin

Eden Prairie detective tainted at least 32 cases.

By Rochelle Olson (http://www.startribune.com/rochelle-olson/10645556/) Star Tribune |

OCTOBER 12, 2018 — 8:43PM

An Eden Prairie police detective's falsified search warrant in a drug case that sent a man to prison has called into question 32 other cases and led to a criminal investigation of the officer, Hennepin County prosecutors said Friday.

The county attorney reviewed cases handled by detective Travis Serafin after he seized drugs from the car of 36-year-old Timothy M. Holmes without a search warrant in September 2017, then falsified one afterward.

At a news conference Friday morning, Chief Deputy Hennepin County Attorney David Brown said he believes Serafin's misconduct is limited to the lone case, but defense attorneys were notified in other cases involving Serafin that remained open at the time he falsified the warrant.

As a result, 32 cases are targets for dismissal because Serafin was a critical witness. There are another 11 cases in which Serafin was a peripheral witness, and the defense lawyers have been contacted. Two people in prison, including Holmes, will likely be released.

"It's devastating; I've been a prosecutor in Hennepin County for over 30 years. I've never seen anything like this," Brown said. "Our trust, the trust of the law enforcement officers who do just exceptional work, and the trust in our prosecutors is everything, so when something like this happens as part of our initiative in doing the right thing, we know our obligation is to take steps as soon as we can to right that wrong."

On Friday, Holmes' attorney Fred Goetz said he filed a motion seeking to withdraw his client's guilty plea and vacate his sentence.

"This is a significant development and we believe it's going to have a significant impact on our case," he said.

Video (05:20) : Two people in prison will



MATT GILLMER, STAR TRIBUNE

"It's devastating; I've been a prosecutor in Hennepin County for over 30 years and I've never seen anything like this," said Chief Deputy

Serafin could not be reached for comment. Sean Gormley, executive director of Law Enforcement Labor Services, the union that represents Eden Prairie police officers, said: "We are concerned any time questions are raised about a member of our law enforcement community. However, we caution against making a rush to judgment."

Serafin, 41, was hired by Eden Prairie in October 2000. He was named officer of the year. The city listed his status as employed but would not say whether he was on leave or was currently being paid. He earns $92,289 annually.

Eden Prairie Police Chief Greg Weber said in a statement that an administrative investigation has begun.

"The Eden Prairie Police Department holds officers to extremely high ethical standards. The Department also affords officers time for due process if their actions are called into question," Weber said. "Although it is difficult for me not to provide further comment on an issue involving the Eden Prairie Police Department, it is important for our organization to follow appropriate protocol."

**A second warrant turns up**

As part of a September 2017 drug investigation, Serafin obtained a search warrant for a house and found large amounts of heroin and fentanyl, Brown said. Serafin then searched Holmes' car and found a smaller amount of drugs. Holmes was charged with first-degree drug sale and third-degree murder related to the overdose death of a person to whom Holmes had sold heroin.

As prosecutor Michael Radmer reviewed the file, he noticed there was no search warrant for the car. He asked Serafin for it, and a week later Serafin sent a warrant that was identical to the first, including the judge's signature. This time, however, it included language authorizing a search of the car.

In January 2018, Goetz, Holmes' attorney, questioned why there were two search warrants. Serafin testified in a hearing that the discrepancy was due to a "clerical error" in the warrants.

In March, Holmes pleaded guilty to a first-degree drug sale charge. As part of the plea, Hennepin County Judge Fred Karasov dropped the third-degree murder charge. Holmes was sentenced to six years in prison.

Karasov, however, was concerned about the two warrants and sent a transcript of Serafin's testimony to the Eden Prairie police. The city investigated and found a "preponderance of evidence" establishing misconduct by Serafin. They determined that Serafin had created a second warrant for the car and claimed it had been signed by Hennepin District Judge Jay Quam, but the judge had signed only the warrant for the house.

**'Inexcusable' and 'baffling'**

Serafin was removed from the Southwest Hennepin Drug Task Force and a SWAT team training unit and required to attend ethics training and work with a supervisor on the "creation and execution of any future search warrants." Brown said the findings have been forwarded to the McLeod County Attorney's Office for possible charges against Serafin.

"Detective Serafin's behavior was wrong and inexcusable," Brown said. "It was also baffling to us because the legal search of the home provided more than enough evidence for our case, and if he had been honest, we would simply have agreed to have the drugs from the car be removed from consideration in those cases. The fair trial of a defendant depends on complete truthfulness by everyone involved. That did not happen here."

Of the cases involved in which Serafin was the main witness, three men are in prison. Two could be released; the third has other charges pending in another county.

Five men are in diversion programs, and their convictions will be dismissed and expunged, Brown said. In 17 cases, defense lawyers have been asked to file motions to vacate convictions, which the prosecutors will then do, Brown said. Serafin had four active warrants out that will be dismissed.

In 14 other cases, Serafin was determined to be a peripheral witness. Three of those were sent to diversion so they will be dismissed and expunged. Of the remaining 11 cases, defense lawyers have been notified.

Serafin also played a key role in the arrest and convictions of Beverly Burrell, a major heroin dealer. Her case is not one of those at issue in the investigation because it was completed before the date on the falsified warrant.

"While there should have never been this kind of dishonesty in the first place, everyone has done their best to repair these damages collectively," Brown said. "We feel like we have taken the steps to repair damages and restore integrity to the system."

---

**Rochelle Olson** is a general assignment reporter for the Star Tribune. Olson has been on the quick strike team for three years, writing about a wide variety of topics. She specializes in the intersection of sports, business and culture.

raolson@startribune.com 612-673-1747 rochelleolson



Eden Prairie police detective Travis Serafin



# Attorney: More Than 30 Cases To Be Dismissed After Officer Travis Serafin Doctored Search Warrant

Officer Could Face Criminal Charges

By Bill Hudson October 12, 2018 at 3:52 pm Filed Under: Eden Prairie, Hennepin County Attorney's Office, Police Officer Misconduct




MINNEAPOLIS (WCCO) — Eden Prairie Detective Travis Serafin received high honors over the years. He spent time working SWAT, emergency response and broke many high-profile drug cases. Now, his alleged misconduct on a September 2017 drug case is discrediting anything he's since touched.

Hennepin County Attorney Mike Freeman's office has already or is in the process of dismissing at least 32 cases in which Serafin was involved.

Ad

Learn The Skills To Build Your Successful Career In Health & Beauty. Enroll Now
Minnesota School of Cosmetology - Advance Your Career in Cosmetology. Get Info!

FOLLOW US

OUR NEWSLETTER
Sign up and get our latest headlines delivered right to your inbox!
Email address
Subscribe Now!

MOST VIEWED

Police: Woman Knocked Down By Northstar Train In Fridley, Disappears Into Woods

"While executing a search warrant officers found a large amount of heroin and some fentanyl in the house and a much smaller amount of drugs in a vehicle," said David Brown, Chief Deputy Hennepin County Attorney.




Officer Travis Serafin in 2008 (credit: CBS)

Judge Jay Quam's signed warrant listed only the house. In preparing their case, prosecutors asked for the warrant covering the evidence seized in the vehicle. One week later, Serafin gave prosecutors a second warrant.

Defendant Timothy Holmes would later plead guilty to drug crimes and third-degree murder in the death of someone he sold the heroin.

"However, the judge who heard Detective Serafin testify was concerned about the testimony," Brown said.

## Check out the press conference below:



Based on those suspicions, Eden Prairie police began to investigate the search warrant and Serafin's work on the case. They'd soon learn the second search warrant was forged and that Serafin had apparently doctored the original to make it appear it was broader than Judge Quam had authorized.


Family Of Boy Thrown From MOA Balcony Say He Needs More Procedures


Man Charged With Misdemeanor In Truck-Buggy Crash That Killed 2


Allianz Field's Neighboring Businesses Give It Mixed Reviews


Target Field Looking To Hire 400 Workers As Twins Soar


Police Identify People Of Interest In Bde Maka Ska Pavilion Fire


'Keep Your Mouth Shut': Most Evidence From Mohamed Noor Trial Released


WCCO Viewers' Choice For Best Workout Class In Minnesota


Reality Check: Does Wind Energy Kill Birds And Cause Cancer?

Ad



MTV VMAs: Hottest Looks of All Time

How the stars looked on the MTV VMAs pink carpet.

"Detective Serafin's behavior here was wrong and inexcusable," Brown said. "It's also baffling to us, because the legal search of the home in the case that led to it provided more than enough evidence for our case. If he had been honest, we simply would have agreed that the drugs found in the car wouldn't be used."

The damage has caused dismissals of dozens of Serafin's cases. More than 30 cases have been dismissed or are in the process of being dismissed because Serafin was a critical witness in those cases. In addition, there are another 11 cases where Serafin was a peripheral witness and the defense lawyers have been contacted.

Three of the cases involve men who are already in prison, including Holmes. The other two are identified as Torrance Gray and Sean Cole.

While the city considers his possible termination, Eden Prairie police chief Greg Weber says the city "holds officers to extremely high ethical standards."

Weber added that officers are given "time for due process if their actions are called into question."

Detective Serafin had been with Eden Prairie since 2000. In 2011 he was selected as the department's Officer of the Year.

Criminal charges are possible against Serafin. Due to conflicts, the McLeod County Attorney will undertake that investigation.

Share this:

Twitter Facebook

Comments (3)



SPONSORED CONTENT *Sponsored by* Hennepin Healthcare

**Managing Arthritis Doesn't Have To Be A Pain**

If you're living with joint pain and are concerned that you may have arthritis, schedule an appointment with your doctor. There may be

## Minneapolis Man Sentenced To Life In Prison For Kidnapping,...

A 24-year-old Minneapolis man who was convicted of kidnapping and raping a woman in 2017 has been sentenced to life in prison without parole.

**Top Cardiologist: This One Thing Will Properly Flush Out Your Bowels**

Gundry MD Supplements |

Sponsored

**Cheap New Senior Apartments in St Paul Are Turning Heads**

Senior Living | Search Ads |

Sponsored

**St Paul, Minnesota Drivers Are Stunned By This New Rule**

EverQuote Insurance Quotes |

Sponsored

**Drivers who switch save an average of $669 on car insurance.**

Progressive |

Sponsored

**[Photos] Wait Till You See The Inside. They Were Tired of Paying Rent, So They Built Themselves A Tiny House. See What It Looks Like Finished**

Finance101 |

Sponsored

**Kanabec County Jail Inmate Accused Of Running Prostitution Ring**

**'I Didn't Believe It Until I Heard It': Parent Reacts To Classroom Insults...**

**There Is One Protein That Can Restart Your Slow Metabolism, And No, It's Not Fish**

Gundry MD Proplant Supplements |

Sponsored

## BCA: 16-Year-Old New Ulm Boy Found Safe

16-year-old Tanner Michael Klammer who went missing May 10 at River Bend Education District in New Ulm has been found safe, Sleepy Eye police say.

**3 Dangerous Foods People Feed Their Dogs (Without Realizing It)**

Dr. Marty ProPower Plus Supplement |

Sponsored




CBS Minnesota

Follow Us

**NEWS**
- Minnesota News
- Minneapolis News
- Business
- Consumer
- Crime
- Politics
- Entertainment
- HealthWatch
- Water Cooler
- Blogs

**WEATHER**
- Minnesota Weather
- Live Radar
- School Closings & Delays
- On The Spot
- Weather Watcher Network
- Weather App

**SPORTS**
- Vikings
- Twins
- Wild
- Timberwolves
- Lynx
- Gophers
- High School Sports Rally

**WATCH + LISTEN**
- Video Library
- Seen On WCCO-TV
- Only CBS
- Best Of
- Contests

**CORPORATE**
- About Us
- WCCO TV
- Advertise
- FAQ
- Broadcast Feedback

©2019 CBS Broadcasting Inc. All Rights Reserved.
Powered by WordPress.com VIP

By viewing our video content, you are accepting the terms of our Video Services Policy

Privacy Policy Terms of Use Your California Privacy Rights Mobile User Agreement Ad Choices
Public File for WCCO-TV Public File for KCCW-TV Public Inspection File Help EEO Report

Joe Gustafson

Back to previous page

ProQuest

document 1 of 1

# Cop who lied over warrant is out: Major drug case was dismissed because of Eden Prairie officer's actions.

Olson, Rochelle.**Star Tribune; Minneapolis, Minn.** [Minneapolis, Minn]18 Dec 2018: B.1.

**startribune.com**


## Abstract

None available.


A veteran investigator left the Eden Prairie Police Department last month, shortly after an admitted drug dealer was released from prison because the officer lied under oath about a search warrant.

Detective Travis Serafin's last day with the Eden Prairie department was Nov. 6, the city's human resources director confirmed Monday. Serafin had worked for the department since October 2000 and earned $92,289. He was once named the department's officer of the year. He was also a member of the Southwest Hennepin Drug Task Force, whose work was at least temporarily suspended after the trouble with Serafin.

In mid-October, the Hennepin County Attorney's Office announced a problem with the search warrant Serafin used to seize drugs and a gun from the house and car of Timothy Holmes on Sept. 14, 2017. Serafin had a warrant for the house, but not the car where most of the drugs and a gun were found.

A week after the search, he created a second warrant that covered both the house and car. When asked about the two warrants, he blamed clerical confusion. He lied under oath, saying the two warrants were a result of sloppy record-keeping on his part during a hectic time.

After the search, Holmes was charged with first-degree drug sale and third-degree murder related to the overdose death of a person to whom Holmes was alleged to have sold heroin. In March 2018, Holmes pleaded guilty to a first-degree drug sale charge. As part of the plea, Hennepin County Judge Fred Karasov dropped the third-degree murder charge in the death of Margaret "Maggie" Lane. Holmes was sentenced to six years in prison.

Eden Prairie investigated concerns about the warrants and found evidence of misconduct by Serafin. In October, Chief Deputy Hennepin County Attorney David Brown said 32 cases were targets for dismissal because Serafin was a critical witness.

"It's devastating; I've been a prosecutor in Hennepin County for over 30 years. I've never seen anything like this," Brown said at the time.

| | |
|---|---|
| Publication year | 2018 |
| Publication date | Dec 18, 2018 |
| Section | NEWS |
| Publisher | Star Tribune Media Company LLC |
| Place of publication | Minneapolis, Minn. |
| Country of publication | United States, Minneapolis, Minn. |
| Publication subject | General Interest Periodicals--United States |
| ISSN | 08952825 |
| Source type | Newspapers |
| Language of publication | English |
| Document type | News |
| ProQuest document ID | 2158009968 |
| Document URL | https://search.proquest.com/docview/2158009968?accountid=45111 |
| Copyright | Copyright Star Tribune Media Company LLC Dec 18, 2018 |
| Last updated | 2018-12-18 |
| Database | Global Newsstream |

Database copyright © 2019 ProQuest LLC. All rights reserved. Terms and Conditions

**Exhibit E**

Mr. Isaacman, (Original Defense Counsel)

Joseph Kaminski, (Original Counsel "RECUSED Due To Slanderous State Witness Accusations)

Brent Kehler (Government Informant/C.I.)

Doug Myren (Counsel for Kehler)

Kelly O'Rourke (Hennepin Co. Task Force Investigator)

John Billington (Dept. of Commerce) "Deceased".

Jill Brisbois (Dual Counsel for Defense)

Lis Carlson (Dual Counsel for Defense)

Jill Nitke (Private Investigator for Defense "NEVER UTILIZED")

Kerry Meyer (Hennepin Co.Dist. Court Judge)

Jared Wolff (Government Witness)

Robert Engles (Government Informant C.I. / Co-Defendant)

Jeffrey Allen Nicoll (Government Informant C.I.)

Jennifer Cornell (Arson Investigator Hennepin Co.)

Jody A Nelson (Arson Investigator Hennepin Co.)

Sean Mckenna (Arson Investigator Hennepin Co. Supv.)

Timothy Thomas (Arson Investigator Hennepin Co.)

Michael Deziel Jr. (Mis-Identified Victim of Cohersion by Hennepin Co Agents)

Greg Chamberlain (Never Charged With Any Crime/Gustafson Charged and Convicted Of Aiding and Abetting Crimes Which Constructed Racketeering Charges)

SA Jim Shoup (IRS) (Investigator In Charge Of Financial Elements of Prosecution/Expert Witness for the State.)

Charles Pratt (Government Informant/C.I.)

Amber Fritche (Government Informant/C.I.)

Krissy Barfnick (Potential Defense Witness)

Troy Amundson (Financial Witness)"Deceased".

Robin Munkelwitz (Financial Witness for Defense "Possible Hostile")

Joshua Ramos's (Government Witness)

Krissy Nye (Plaintiffs Witness)

Cassandra Simonson (Government Witness)

Troy Michael Neuberger (Government Informant/C.I.)

Charles R. Laymon (Original Government Informant/C.I.)"POSATIVE DEFENSE WITTNESS INVOLVING ARSON AND NEUBERGER ACTIVITY)

Curtis Alan Lind (Government Witness)

Jerry Stinson (Government Witness)

Roy Morris (Witness for Defense "Possible Hostile")

Lennie Guilmette (Government Informant/C.I.)"DECEASED" (Plaintiffs Witness)

Need to Stipulate Authentication of Prior Statements under Federal Criminal Code and Rules Article Viii.Hearsay doctrine.

**Exhibit F**

In the first letter, dated 4-6-2016, Ms. Brisbois, trial counsel, wrote to Gustafson that she sent all the evidence to the Hennepin County public defender's office, and for Gustafson to contact Chela Guzman. This letter from Ms. Brisbois was cc'd to Lis Carlson, Ms. Brisbois co-counsel; Brian Hill, who worked for Computer Forensic Services, the first company Gustafson hired to investigate the recording in regards to count #10; and Chela Guzman, the Hennepin County assistant public defender. In Exhibit K she says she don't have discs. but here she maintained an electronic copy of the file.

Eric L. Newmark *^
Jeffrey S. Storms
Jill A. Brisbois

David B. Weber
Paralegal

Monica Bordonaro
Registered Paralegal

# NEWMARK·STORMS
## LAW OFFICE LLC

100 South Fifth Street, Suite 2100
Minneapolis, MN 55402
p: 612-455-7050
f: 612-455-7051
www.newmarkstorms.com

jill@newmarkstorms.com

April 6, 2016

Joseph Gustafson
OID 196420
970 Picket St. N.
Bayport MN 55003

Re: State of Minnesota v. Joseph Gustafson
Case File No.: 27-CR-11-5352

Dear Joe:

I received your Letter of Demand dated April 3, 2016.

As I have told you over the years, I am not in possession of the discs that were disclosed by the State of Minnesota during the pendency of your case. After the completion of this matter, I turned everything over to the Hennepin County Public Defender's Office for their office to maintain. I will again direct you to speak with the Hennepin County Public Defender's Office to obtain the discs that you are looking to have sent to you. You should contact:

> Chela Guzman
> 701 4th Avenue South, Suite 1400
> Minneapolis, MN 55415

I have maintained an electronic copy of the file.

In an effort to try and help you with this situation, I spoke with Brian Hill at Computer Forensic Services. I inquired if their company would be able to perform the services they have been retained for with the recordings in the form maintained on my system. He was unsure, but stated they could try to perform the analysis on the recordings.

Therefore, based upon your demand letter and Computer Forensic Services confirmation of an agreement with you, I emailed links to the recordings from Counts 6, 8, 9, and 10 directly to Brian Hill at Computer Forensic Services.

I wish you the best of luck in your endeavors.

Sincerely,

Jill A. Brisbois

Cc: Lis Carlson (via email)
Brian Hill (via email)
Chela Guzman (via email)

## Exhibit G

In the second letter, dated 3-26-2018, two years after the first letter from Ms. Brisbois, Ms. Guzman states that she is not able to find Gustafson's discs in her office's possession.

OFFICE OF THE PUBLIC DEFENDER
HENNEPIN COUNTY - FOURTH JUDICIAL DISTRICT
701 FOURTH AVENUE SOUTH, SUITE 1400
MINNEAPOLIS, MN 55415-1600

MAIN OFFICE NUMBER:
(612) 348-7530

MARY F. MORIARTY
CHIEF PUBLIC DEFENDER

FAX NUMBERS:
(612) 348-6179/(612) 348-2025

March 26, 2018

Mr. Joseph Duane Gustafson Jr. (OID #196420)
c/o Minnesota Correctional Facility – Moose Lake
1000 Lake Shore Drive
Moose Lake, Minnesota 55767

Re: **State v. Joesph Duane Gustafson Jr.**
MNCIS Case No. 27-CR-11-5352

Dear Mr. Gustafson:

Enclosed please find a CD which includes copies of audio exhibits #1-10 and transcripts from your trial. Also included are summaries of the CD's contents on three pages. Per your request, I have attempted to locate the discs you recall reviewing with your lawyer Ms. Brisbois in 2011. As we discussed during our March 20th telephone conversation, we do not have any discs in our office's possession. Nor have I found them in your appellate defender file. Per your request, I will reach out to the Hennepin County Attorney's Office and ask for another copy of your complete file, if possible.

I will update you soon as to their response.

Sincerely,

Chela A. Guzmán-Wiegert
Assistant Public Defender
(612) 348-4249

Enc.

**Exhibit H**

In the third letter, dated 4-11-2018 Ms. Guzman tells Mr. Gustafson that after a search of the off-site storage no original file was found. Also, the state appellate office sent the Hennepin County public defender's office their copy of Mr. Gustafson's file, but this file did not include the discovery or "our original materials."

OFFICE OF THE PUBLIC DEFENDER
HENNEPIN COUNTY - FOURTH JUDICIAL DISTRICT
701 FOURTH AVENUE SOUTH, SUITE 1400
MINNEAPOLIS, MN 55415-1600

COPY

MAIN OFFICE NUMBER:
(612) 348-7530

MARY F. MORIARTY
CHIEF PUBLIC DEFENDER

FAX NUMBERS:
(612) 348-6179/(612) 348-2025

April 11, 2018

Mr. Joseph Duane Gustafson Jr. (OID #196420)
c/o Minnesota Correctional Facility – Moose Lake
1000 Lakeshore Drive
Moose Lake, Minnesota 55767

Re: State v. Joseph Duane Gustafson Jr.
MNCIS Case No. 27-CR-11-5352

Dear Mr. Gustafson:

Per your request, I have enclosed a second copy of the correspondence I sent to you on March 26, 2018. Enclosed please find a CD which include copies of audio exhibits #1-10 and copies of the original letter and 2-page summary that I sent via USPS mail on March 26th. After our telephone conversation today, I recreated these materials for you. It was concerning to hear that you did not receive this correspondence. The materials were sent the same way we send all of our correspondence to clients incarcerated at Minnesota Correctional Facilities. Furthermore, the original envelope has not come back to my office as "returned mail."

As we have previously discussed, when my office received your request for another copy of the discovery from your case, I requested that the original file be located and returned from off-site storage. A search was conducted and no physical file was located. I also contacted the State Appellate Office because we often give them our file for the appeal. They sent us a copy of their file, which did not include a copy of the discovery or our original materials.

My notes indicate that I updated you of this status on March 20th during a telephone conversation. I also explained that it was my understanding that you were provided a complete copy of the discovery by your trial attorneys. Both Ms. Brisbois and Ms. Carlson have indicated that on a least one occasion, you received a complete copy of the discovery from the case. At the close of our March 20th call, I offered to contact the Hennepin County Attorney's Office on your behalf and ask for another copy of the discovery.

I was able to speak to Assistant County Attorney Brittany Lawonn regarding your request. She has explained that her office is not inclined to duplicate the file and that if you choose to file a motion, they will likely oppose it.

As I indicated today, I will continue to search for the original file in your case and keep you updated on its status.

Sincerely,

Chela A. Guzmán-Wiegert
Assistant Public Defender
(612) 348-4249

Enc.

**Exhibit I**

In the fourth letter, dated 4-17-2018, Ms. Guzman refers to the 4-11-2018 letter, stating that Ms. Guzman did find two discs that contained all the discovery, but Ms. Guzman found this from *Ms. Brisbois*.

Office of the Public Defender
Hennepin County - Fourth Judicial District
701 Fourth Avenue South, Suite 1400
Minneapolis, MN 55415-1600

Main Office Number: (612) 348-7530
Mary F. Moriarty, Chief Public Defender
Fax Numbers: (612) 348-6179

April 17, 2018

Mr. Joseph Duane Gustafson Jr. (OID No. 196420)
c/o Minnesota Correctional Facility-Moose Lake
1000 Lakeshore Drive
Moose Lake, Minnesota 55767

RE: State v. Joseph Duane Gustafson Jr.
MNCIS File No. 27-CR-11-5352

Dear Mr. Gustafson:

Enclosed please find the original letter and disc that I sent you on March 26, 2018. These items were returned to our office, by U.S. Mail today, April 17, 2018. It appears that they were returned to my office because they had been mailed to you in a padded envelope. It is my understanding that the Minnesota Correctional Facility-Moose Lake would not accept the mailing because of its packaging. I have included a photocopy of the returned envelope for your review.

Also enclosed is a copy of the letter I sent to your attention on April 11, 2018. I am not sure whether you have received this correspondence, as it too was sent in a padded envelope. Although the mailing has yet to return to my office, I anticipate that correctional facility staff will decline to accept it again.

A few days after I sent the April 11th letter to you, I learned that the discovery from your file was located. Enclosed are two discs that contain all of the discovery that was provided to Ms. Brisbois and Ms. Carlson in your case.

Please let me know if I may provide additional assistance.

Sincerely,

Chela A. Guzmán-Wiegert
Assistant Public Defender
(612) 348-4249

Encls

## Exhibit J

In the fifth letter and affidavit, dated 6-15-2018, at least 5 years after Gustafson's sentence became final, after numerous attempts by Gustafson to obtain the relevant evidence against him in this proceeding to mount a defense and to file a timely habeas, Ms. Guzman, from the Hennepin County public defender's office wrote a letter and submitted an affidavit to Mr. Gustafson detailing the course that was taken in her attempt to locate the discovery information for Gustafson's criminal trial.

OFFICE OF THE PUBLIC DEFENDER
HENNEPIN COUNTY - FOURTH JUDICIAL DISTRICT
701 FOURTH AVENUE SOUTH, SUITE 1400
MINNEAPOLIS, MN 55415-1600

MAIN OFFICE NUMBER: (612) 348-7530

MARY F. MORIARTY
CHIEF PUBLIC DEFENDER

FAX NUMBERS: (612) 348-6179/(612) 348-2025

June 15, 2018

Mr. Joseph Duane Gustafson Jr. (OID No. 196420)
c/o Minnesota Correctional Facility-Moose Lake
1000 Lakeshore Drive
Moose Lake, Minnesota 55767

RE: State v. Joseph Duane Gustafson Jr.
MNCIS File No. 27-CR-11-5352

Dear Mr. Gustafson:

Enclosed please find an affidavit prepared by me detailing the steps taken to locate the discovery related to the above matter. The affidavit is consistent with my previous letters and our telephone discussions.

I was happy to hear that you have finally received access to the two discs I sent to you in April. As we discussed during our last telephone conversation, the discs contain the exact same information we have on file for 27-CR-11-5352. I have been told by trial counsel that the items are a complete copy of the discovery received by the Hennepin County Attorney's Office during the course of your case.

Please let me know if I may provide additional assistance.

Sincerely,

Chela A. Guzmán-Wiegert
Assistant Public Defender
(612) 348-4249

Encl

| | |
|---|---|
| STATE OF MINNESOTA<br>COUNTY OF HENNEPIN | DISTRICT COURT - FELONY DIVISION<br>FOURTH JUDICIAL DISTRICT |

State of Minnesota,
Plaintiff,

-vs-

**JOSEPH DUANE GUSTAFSON, JR.,**
Defendant.

**AFFIDAVIT OF CHELA GUZMÁN-WIEGERT**

MNCIS No. 27-CR-11-5352

STATE OF MINNESOTA )
) ss.:
COUNTY OF HENNEPIN )

I, Chela Guzmán-Wiegert, being duly sworn state that:

1. I am an Assistant Hennepin County Public Defender.

2. On February 8, 2018, I received a letter from Mr. Gustafson requesting that another copy of the discovery from the 27-CR-11-5352 be provided to him.

3. Mr. Gustafson's case, 27-CR-11-5352 was a 2011 public defender matter handled by outside counsel Jill Brisbois and Lis Carlson.

4. After receiving Mr. Gustafson's letter, I requested that the original file be located and returned to my office from off-site storage. A search was subsequently conducted at the off-site storage location and I was notified that the physical file was not located.

5. In an attempt to locate a complete copy of file 27-CR-11-5352, I asked my staff to contact the State Appellate Public Defender Office and request their file because my office often provides a copy of the original file as part of the appeal preparation process. The appellate file was located and later delivered to my office via courier.

6. On March 19, 2018, I personally reviewed the appellate file and it did not include a copy of the discovery nor did it include our original materials.

7. On March 20, 2018, I updated Mr. Gustafson via telephone of my inability to locate the original file with discovery. He asked that I follow up with the Hennepin County Attorney's Office and request another complete copy of file 27CR-11-5352.

8. I contacted discovery staff at the Hennepin County Attorney's Office. On March 22, 2018, I was directed to contact Assistant Hennepin County Attorney Brittany Lawonn. I spoke

with Ms. Lawonn and requested an additional copy of the discovery in 27-CR-11-5352. On March 26, 2018, Ms. Lawonn informed me that an additional copy of the file would not be provided and that the State would be opposing any request because the case is no longer pending.

9. On April 11, 2018, I spoke with Mr. Gustafson via telephone and updated him on the State's position.

10. On April 11, 2018, I contacted outside counsel Jill Brisbois and Lis Carlson. I explained that I could not find original file 27-CR-11-5352. Ms. Brisbois and Ms. Carlson indicated that at the close of the case, they provided their original file and notes to the assigned paralegal. They offered to search their records again and determine if they have any documents related to Mr. Gustafson's case.

11. On April 12, 2018, Ms. Brisbois contacted me and explained that she was able to locate a duplicate electronic copy of the discovery related to 27-CR-11-5352. She then shared access to the file electronically.

12. That same day, I asked my office's IT staff to download a copy of the large data file we received. The file was then electronically copied, secured in our electronic case management system and duplicated for Mr. Gustafson. On April 17, 2018, I sent Mr. Gustafson a letter which included two discs containing the discovery. This letter was sent to his attention at Minnesota Correctional Facility-Moose Lake.

13. On April 18, 2018, I spoke to Mr. Gustafson via telephone and updated him that the discovery was in route to him via email.

I hereby certify that the above information is true and correct to the best of my knowledge.

[signature]
Chela Guzmán-Wiegert
Assistant Hennepin County Public Defender

Subscribed and sworn to before me by
this 15th day of June, 2018.

[signature]
Notary Public
Hennepin County, Minnesota

REBECCA A. GERMUNDSON
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2020

**Exhibit K**

Lastly, in the letter dated 2-20-2014, Ms. Brisbois is shown to have begun the "run-around" of Mr. Gustafson trying to obtain his discovery files, by directing Mr. Gustafson to contact the Hennepin County public defender's office. This is in conjunction with letter four, and objection #6, p. 6, VOL. I, pp. 1-699.

Eric L. Newmark*^
Jill A. Brisbois

NEWMARK
LAW OFFICE LLC
100 South Fifth Street, Suite 2100
Minneapolis, MN 55402
p: 612-455-7050
f: 612-455-7051
www.newmarkdefense.com

February 20, 2014

Joesph D. Gustafson
OID 196420
MCF Stillwater
970 Pickett St. N.
Bayport, MN 55003

Dear Joe,

I received your letter dated on January 27, 2014, postmarked February 14, 2014 on February 18, 2014.

To answer your first question, yes Brad Colbert did contact me while he was preparing your appeal and we had an opportunity to discuss your case, trial, and sentencing.

Your second request is for a copy of the discovery discs. In preparation for your trial, you were give a copy of the discovery in its in entirety. The Hennepin County Public Defender's office maintained a copy of the discs that were provided during discovery. Please direct your requests regarding this issue to:

William M. Ward
Chief Public Defender
4th Judicial District
Hennepin County
701 4th Avenue South, Suite 1400
Minneapolis, MN 55415

Please let me know if you have any questions.

Sincerely,

Jill A. Brisbois

*Also Licensed in Wisconsin
^MSBA Certified Criminal Law Specialist

**Exhibit L**

The letter dated 5-19-2015, where Mr. Colbert, the appellate counsel that the state appellate office appointed Mr. Gustafson, from the Legal Assistance to Minnesota Prisoner's (LAMP) – William Mitchell College of Law – states that he does Not "know of an expert in this area" of computer forensics.

**LEGAL ASSISTANCE TO MINNESOTA PRISONERS (LAMP)**
William Mitchell College of Law • 875 Summit Avenue, Room 254 • St. Paul, MN 55105
T (651) 290-6413 • F (651) 290-6407 • E lamp.clerk@wmitchell.edu

*"A society should not be judged on how it treats its outstanding citizens, but by how it treats its criminals."*
- Fyodor Dostoevsky

**Bradford Colbert, Director**
**Student Attorneys**

Joseph Bergstrom
Michael Brauchla
Jaquelyn Childers
Stephen Crites
Alexander Davis
Patrick Doran
Joshua Erspamer
Erin Frana
Jordan Humphrey
Alyssa Jones
Edward Mattimoe
Alexandra Meyer
Beth Anne Schroeder
Evan Shapiro
Sydney Silko
Danielle Thompson
Zachary Van Cleve
Kaitrin Vohs

May 19, 2015

Joseph Gustafson
OID 196420
MCF – Stillwater
970 Pickett Street
Stillwater, Minnesota 55003

Dear Mr. Gustafson:

I am writing with some good news, for a change. The Minnesota Supreme Court granted our petition for review. Enclosed is a copy of the Supreme Court's order.

The Court stayed further proceedings pending its decision in *State v. Kangbateh.* As you may recall, the Supreme Court is considering a similar issue in *Kangbateh.* Their decision in that case will have a significant impact on your case.

There is no telling when the Supreme Court will issue a decision in *Kangbateh.* I will let you know as soon as I hear anything.

Regarding your request for your trial material, I believe that you are entitled to your entire file. Please let me know where you would like this material sent (I presume that you will not be able to have this material at Stillwater). I will then contact Ms. Brisbois.

Regarding your request for a recording specialist, I'm sorry but I don't know of an expert in this area.

Please let me know if you have any questions.

Sincerely,

BC (MD) for

Bradford Colbert

Enc. Order

**Exhibit M**

In a letter dated 3-12-2014, Mr. Colbert states that he is not going to represent Mr. Gustafson in a post-conviction petition to "challenge the calculation of your criminal history score."

**LEGAL ASSISTANCE TO MINNESOTA PRISONERS (LAMP)**
William Mitchell College of Law • 875 Summit Avenue, Room 254 • St. Paul, MN 55105
T (651) 290-6413 • F (651) 290-6407 • E lamp.clerk@wmitchell.edu

*"A society should not be judged on how it treats its outstanding citizens, but by how it treats its criminals."*
- Fyodor Dostoevsky

**Bradford Colbert, Director**
**Student Attorneys**

Cassie Benson
Katie Galler
Christopher Mishek
Alyse Schroeder
Natalie Ehret
Megan Johnson
Mackenzie Moy
Andrea Jo Skolnick
Steve Elentukh
Ashley Jones
Lindsey O'Connell
Danielle Thompson
Heather Follensbee
Natalie Lamphier
Lauren Pockl
DJ Yokom

March 12, 2014

Joseph Gustafson, Jr.
OID # 196420
MCF-Stillwater
970 Pickett Street
Bayport, MN 55003

Dear Mr. Gustafson:

I received your letter from January 22, 2014.

I am going to respectfully disagree; I do not think I was ineffective in my representation of you. In fact, I think I did an excellent job on your appeal. Obviously we did not get the results we were hoping for, but, unfortunately, excellent work doesn't always translate to excellent results.

I'm not exactly sure where you'd like to go from here. If you want to pursue an ineffective assistance of counsel claim – which is your right – I obviously cannot continue to represent you on a post-conviction petition where we were going to challenge the calculation of your criminal history score.

Let me know what you want to do.

Sincerely,

Bradford Colbert
Attorney at Law