# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Joseph Duane Gustafson, Jr.,

        Petitioner,

v.

William Bolin, et al,

        Respondents.

Case No. 19-cv-1963 SRN/ECW

**ORDER**

---

Joseph Duane Gustafson, Jr., OID # 196420, MCF-Moose Lake, 1000 Lakeshore Dr., Moose Lake, MN 55767, pro se

Matthew Frank, Minnesota Attorney General's Office, 445 Minnesota St., Suite 1800, St. Paul, MN 55101, and Jonathan P. Schmidt, Hennepin County Government Center, 300 S. 6th St., Ste. C-2000, Minneapolis, MN 55487, for Respondents

---

SUSAN RICHARD NELSON, U.S. District Judge

This matter is before the Court on Petitioner Joseph Duane Gustafson, Jr.'s Objections [Doc. No. 21] to United States Magistrate Judge Elizabeth Cowan Wright's September 18, 2019 Report and Recommendation ("R&R") [Doc. No. 15]. In the R&R, the magistrate judge recommended that: (1) Petitioner's 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus by a Person in State Custody ("Petition") [Doc. No. 1] be dismissed as untimely; (2) Respondent Keith Ellison's Motion to Dismiss [Doc. No. 6] be granted; (3) Petitioner's Motion for Discovery [Doc. No. 2] be denied; and (4) no Certificate of Appealability be issued.

After Magistrate Judge Wright issued the R&R, Gustafson filed a Motion for a Certificate of Appealability [Doc. No. 20], a motion entitled "Miscarriage of Justice Actual Innocence Exception to Excuse a Time Bar" (hereafter, "Actual Innocence Motion") [Doc. No. 22]; and an Application to Proceed in District Court without Prepaying Fees or Costs (hereafter, "IFP Application") [Doc. No. 26].

For the reasons set forth below, Petitioner's Objections are overruled, the Court adopts the R&R, as modified, and dismisses this matter with prejudice. The Court also denies the Petitioner's Motion for a Certificate of Appealability and his Actual Innocence Motion. Finally, the Court denies as moot Gustafson's IFP Application.

I. BACKGROUND

A. State Court Proceedings

Gustafson was convicted in Minnesota state court in 2012 of racketeering, terroristic threats, kidnapping, three counts of controlled-substance offenses, two counts of ineligible person in possession of a firearm, and four counts of theft by swindle, and was sentenced to a term of imprisonment of 210 months. (R&R at 1) (citing *Gustafson v. State*, No. A17-1806, 2018 WL 3520830, at *1 (Minn. Ct. App. July 23, 2018)). The criminal complaint alleged that he committed these crimes with other members of the "Beat-Down Posse," a group of persons allegedly led by Gustafson and his father, Joseph Gustafson, Sr. *Minnesota v. Gustafson*, No. A12-1293, 2013 WL 4404241 (Minn. Ct. App. Aug. 19, 2013), *review denied*, (Minn. Oct. 23, 2013); *see also State v. Gustafson*, No. A12-0918, 2013 WL 1705029, at *1 (Minn. Ct. App. April 22, 2013) (providing factual background in Gustafson, Sr.'s direct appeal).

In 2012, Gustafson filed a direct appeal, challenging the sufficiency of the evidence, evidentiary rulings, the sentencing severity level, and the criminal history score. *Gustafson*, 2013 WL 4404241, at *1–2. In a pro se supplemental brief, he further argued that the state had violated his due process rights by charging him with additional crimes after he had posted bail on two charges, he received ineffective assistance of trial counsel, the state failed to timely disclose all of its evidence, the state's witnesses testified falsely, the police acted in bad faith by creating, destroying, and altering evidence, the state violated his right to confront his accusers by not calling bank and mortgage company employees, and the prosecutor engaged in misconduct in his closing argument. *Id.* at *7–8. The Minnesota Court of Appeals rejected all these arguments, except for the calculation of Gustafson's criminal history score. *Id.* The court affirmed his convictions, but reversed and remanded to correct his criminal history score on resentencing. *Id.* at *6–8.

On resentencing, even with a corrected criminal history score, the trial court sentenced Gustafson to the same sentence of 210 months that it had previously imposed. *See Gustafson*, 2018 WL 3520830, at *1. The Minnesota Court of Appeals affirmed his sentence, *id.* (citations omitted), and, on September 15, 2015, the Minnesota Supreme Court denied review. (R&R at 3) (citing *State v. Gustafson*, No. A14-1098 (Minn. Sept. 15, 2015)).

In 2017, Petitioner filed a pro se petition for postconviction relief in which he asserted 12 claims: (1) ineffective assistance of trial and appellate counsel; (2) prosecutorial misconduct based on opening and closing statements; (3) *Brady* violations; (4) perjured testimony; (5) vindictive prosecution; (6) failure to disclose an expert witness;

(7) speedy-trial violations and police misconduct; (8) erroneous admission of hearsay evidence; (9) erroneous admission of *Spreigl* testimony; (10) judicial bias; (11) cumulative error; and (12) lack of personal jurisdiction. *Gustafson*, 2018 WL 3520830, at *1. The postconviction court denied relief, and the Minnesota Court of Appeals affirmed. *Id.* at *2–3. The court found that with one exception, all of Petitioner's claims were barred by the *Knaffla* rule, as they were based on grounds that could have been raised on direct appeal. *Id.* at *2. As to the sole issue that Gustafson could not have previously raised, ineffective assistance of appellate counsel, the Minnesota Court of Appeals affirmed the decision of the postconviction court, denying it on the merits. *Id.* at *3 (noting, among other things, that appellate counsel need not raise a claim if counsel legitimately concludes it will not prevail).

### B. Habeas Petition

On July 25, 2019, Gustafson filed the instant § 2254 Petition. He asserts five grounds of relief, which fall into the following three categories: (1) ineffective assistance of trial counsel, (Pet., Grounds 1 & 2); (2) the use of false evidence and *Brady* violations, (*id.*, Grounds 3 & 4); and (3) ineffective assistance of appellate counsel. (*Id.*, Ground 5).

In the R&R, Magistrate Judge Wright recommended the denial of Gustafson's Petition, finding it untimely. (R&R at 3–5.) She found that Gustafson failed to satisfy any of the four grounds necessary to excuse a late filing, nor could he establish actual innocence to override the statute of limitations. (*Id.*) Magistrate Judge Wright also recommended the denial of two motions that Gustafson had filed—his Motion for Discovery and Motion for Assertion of Minnesota Rule 144. (*Id.* at 6–7.)

4

In his Objections, Gustafson raises the following arguments: (1) the magistrate judge applied the incorrect legal standard for actual innocence; (2) a recording used at his trial was altered, which serves as new evidence and supports his claim of actual innocence; (3) Attorney General Ellison should not be dismissed as a respondent; (4) his Motion for Assertion of Minnesota Rule 144 should be granted, "because lower courts have stood mute on the subject"; (5) his Motion for Discovery should be granted to permit character witnesses and alibi witnesses to testify regarding his actual innocence; (6) the state has impeded his ability to seek habeas corpus relief, contrary to the magistrate judge's findings; and (7) contrary to the magistrate judge's findings, the evidence that he identifies in support of his claim of actual innocence is related to the question of whether he committed the crimes in question. (Objs. at 2–14.)

In support of his claim of actual innocence, Gustafson also filed a separate memorandum entitled "Miscarriage of Justice Actual Innocence Exception to Excuse a Time Bar" ("Actual Innocence Memorandum" [Doc. No. 23]), along with his Objections. He attached several exhibits to his Actual Innocence Memorandum, which apparently were not before the magistrate judge.[1] The purportedly new evidence consists of the following, as described by Gustafson:

1. "Affidavit from Charlie Laymon that asserts that the Department of Commerce, by way of Investigator John Billington, persuaded Laymon to testify against Gustafson, Sr. in that Sr. made the order for arson.

---

[1] To the extent Gustafson believes that evidence in his state court postconviction file is before this Court, he is mistaken. (*See, e.g.*, Mot. for Discovery at 2–3) (referring to exhibits in the "Post-Conviction Petition," the jury trial transcript, and bates numbered documents that are apparently in one of the underlying state court records)). Gustafson was required to file any documents that he wished to submit to this Court in this federal habeas action.

Amber Hawkins, the prosecutor intimidated Laymon in that Laymon would do 15 years if he did not cooperate. (Ex. A)."

2. "Affidavit from Greg Chamberlain that he was never charged with 3rd degree sales while Gustafson was charged with aiding and abetting 3rd degree sales, and convicted of 3rd degree sales. (Ex. B)."

3. "Audio forensics, from Immu[r]e Records, that show the primary linchpin tape recording of a controlled buy of a gun was altered throughout the recording. (Ex. C)."

4. "Newspaper articles, from after trial, that show how the Hennepin County Metro Gang Strike Force has had several cases tried against them in regards to egregious and fraudulent practices while gathering evidence for alleged crimes and convictions. (Ex. D)."

(*Id.* & Exs. [Doc. No. 24] to Actual Innocence Mem.[2])

## II.   DISCUSSION

The district court reviews de novo those portions of the R&R to which a specific objection is made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *accord* D. Minn. L.R. 72.2(b)(3).

### A. Habeas Petition Limitations Period

The Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254, limits the availability of federal relief for petitions of habeas corpus brought by persons in custody pursuant to a state court judgment. Courts may not grant a habeas petition unless the state court's adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

_____

[2] All exhibits to which the Court refers were filed by Petitioner at Docket No. 24.

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner bears the burden of rebutting the presumption by clear and convincing evidence.  *Id.* § 2254(e)(1).

In addition, federal court habeas review of state court criminal convictions resulting in incarceration is subject to a one-year limitations period.  28 U.S.C. § 2244(d).  The one-year limitation period runs from the latest of—

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(*Id.* § 2244(d)(1)(A)–(D).)

## 1. Starting Date of Limitations Period

As the magistrate judge properly found, the date on which judgment became final due to the expiration of the time for seeking review, under § 2244(d)(1)(A), is the applicable time for commencement of the one-year limitations period here.  (R&R at 2–3.) The Minnesota Supreme Court denied review of Gustafson's resentencing appeal on

September 15, 2015, and he had 90 days thereafter in which to seek review from the United States Supreme Court. Accordingly, Gustafson's judgment of conviction became final on December 14, 2015. (*Id.* at 3) (citing *Jihad v. Hvass*, 267 F.3d 803, 804–05 (8th Cir. 2001)). Unless another provision of § 2244(d)(1) applies, under § 2255(d)(1)(A), Gustafson had until December 14, 2016 to file a habeas petition. While the pendency of a postconviction appeal is not counted toward the limitations period, 28 U.S.C. § 2244(d)(2), no allowance for Gustafson's state court postconviction appeal is necessary, as he did not file it until May 18, 2017—past the December 14, 2016 deadline for filing a habeas petition. (*See* R&R at 3.)

### a. State Action Impediments in Violation of the Constitution or Federal Law

Although Gustafson did not plead a state action impediment to excuse the application of the one-year limitations period under § 2244(d)(1)(B), (*see* Pet. at 16), he nevertheless objects to the magistrate judge's statement that "Gustafson does not allege that the State of Minnesota has ever impeded his ability to seek habeas corpus relief." (*See* R&R at 3.) As noted, the statute of limitations may run from "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." 28 U.S.C. § 2244(d)(1)(B).

In his Objections, Gustafson contends that the state has prevented him from obtaining certain "relevant evidence," such as recordings used at trial and the trial case file. (Objs. at 7, 12–13.) He further contends that "the state of Minnesota" has impeded his

ability to timely file a habeas action because his appellate counsel failed to "follow through" with Gustafson's "wish" for a forensic examination of a recording. (*Id.* at 8.) He asserts that such impediments are longstanding, arguing that the "State from the beginning has been hindering petitioner's defense from the time of the trial." (*Id.* at 7.)

In support of Gustafson's contention that the state violated his rights by denying his access to discovery and trial materials, Gustafson points to several letters. Two letters, dated February 20, 2014 and April 6, 2016, are from Jill Brisbois, his trial counsel, appointed by the Hennepin County Public Defender's Office. (Ex. F (April 6, 2016 Letter from Brisbois) & Ex. K (Feb. 20, 2014 Letter from Brisbois).) The correspondence from Ms. Brisbois, concerns Petitioner's request for certain discovery that he reviewed prior to trial. (*Id.*) Ms. Brisbois directed Gustafson to the Hennepin County Public Defender's Office. (*Id.*) In the 2014 letter, she further noted that "[i]n preparation for your trial, you were give[n] a copy of the discovery in its entirety." (Ex. K (Feb. 20, 2014 Letter).) As a factual matter, these letters do not demonstrate that Ms. Brisbois impeded Petitioner's constitutional or federal rights and prevented him from timely filing a habeas petition. To the contrary, they demonstrate that she sought to assist him.

Gustafson also submits four letters from the Hennepin County Public Defender's Office, dating from March 26, 2018 to June 15, 2018, in response to Gustafson's request for trial-related materials. (Ex. G (Mar. 26, 2018 Letter from Guzman-Wiegert); Ex. H (April 11, 2018 Letter from Guzman-Wiegert); Ex. I (April 17, 2018 Guzman-Wiegert Letter); Ex. J. (June 15, 2018 Guzman-Wiegert Letter & Aff.).) These letters show that the Hennepin County Public Defender's Office took several steps to locate the requested

materials and provide them to Gustafson. (Ex. J (June 15, 2018 Guzman-Wright Letter & Aff.) at Aff. ¶¶ 2–13.) Moreover, the documents show that the office received the request from Gustafson in February 2018, long past the habeas filing deadline. (*Id.* ¶ 2.) Like the letters from Ms. Brisbois, these letters do not factually support Gustafson's claim of state action in violation of the Constitution or federal law that impeded his ability to timely file a habeas petition.

A letter dated May 19, 2015 from Gustafson's appellate counsel, Brad Colbert, is similar. In the letter, Mr. Colbert addressed an inquiry that Gustafson had made about his "entire file." (Ex. L (May 19, 2015 Letter from Colbert).) Mr. Colbert stated that Gustafson was entitled to his file, and asked, "[p]lease let me know where you would like this material sent (I presume that you will not be able to have this material at Stillwater). I will then contact Ms. Brisbois." (*Id.*) Nothing about this conduct demonstrates violative state action that impeded Gustafson's ability to file a habeas petition on time.

Gustafson also asserts that the state impeded access to discovery materials before and/or during trial.[3] (Objs. at 7–8.) But nothing about the alleged conduct in 2012 impeded Petitioner's ability to meet the habeas filing deadline, approximately four years later. As evidenced in his Petition, Gustafson raised concerns about *Brady* and general discovery violations in both his direct appeal and postconviction appeal. (*See* Pet., Grounds 3 & 4)

---

[3] In support of this argument, Gustafson cites the following language, apparently from his trial transcript, without identifying the speaker: "Nonetheless, certain documents have now turned up missing, and not only are those documents missing, some of those were bank records, not Mr. Gustafson's, other people's bank records. Jail staff doesn't know what happened to them, they are just gone." (Objs. at 7.)

(indicating "yes" in response to whether he raised *Brady* and discovery claims on direct appeal and in his postconviction petition). On direct appeal, the appellate court rejected these claims, *Gustafson*, 2013 WL 4404241, at *7, and, on postconviction review, the court declined to hear them, citing *State v. Knaffla*, 243 N.W.2d 737 (Minn. 1976), under which a postconviction petition cannot raise claims that were raised on direct appeal or could have been raised on direct appeal. *Gustafson*, 2018 WL 3520830, at 2–3.

For all of these reasons, the Court finds that Gustafson's claimed lack of access to his legal files is not factually supported and does not constitute state action in violation of the Constitution or federal law that impeded his ability to timely file a habeas petition. 28 U.S.C. § 2244(d)(1)(B). Moreover, in related contexts, courts have held that the lack of access to transcripts or files does not warrant a delay in the limitations period. In *Earl v. Fabian*, 556 F.3d 717, 725–26 (8th Cir. 2009), in the context of § 2244(d)(1)(D), the Eighth Circuit noted that the statute "'does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might . . . support his claim.'" (quoting *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998)); *see also Jihad*, 267 F.3d at 806–07 (holding, in the related context of equitable tolling, that the "lack of access to a trial transcript does not preclude a petitioner from commencing . . . proceedings[.]").

Gustafson also argues that state action violated his rights, presumably under the Fifth Amendment, when his appellate counsel, Mr. Colbert, failed to identify a forensic recording specialist in 2015, which impeded his ability to timely file a habeas petition. (Ex. L (May 19, 2015 Letter from Colbert).) Mr. Colbert represented Gustafson through the

Legal Assistance to Minnesota Prisoners program at William Mitchell College of Law. (*See id.*) The primary purpose of Mr. Colbert's May 19, 2015 letter was to update Gustafson on his petition for review to the Minnesota Supreme Court regarding his resentencing. (*Id.*) Mr. Colbert also stated, "Regarding your request for a recording specialist, I'm sorry but I don't know of an expert in this area." (*Id.*) Appellate counsel's lack of familiarity with a forensic recording expert does not constitute an impediment to the timely filing of a habeas petition. On direct appeal in 2013, the Minnesota Court of Appeals rejected Gustafson's pro se argument that the state had created, destroyed, or altered evidence, *Gustafson*, 2013 WL 4404241, at *7, and the Minnesota Supreme Court denied review. Gustafson acknowledges in his Petition that he exhausted the claim regarding the falsely edited recording on direct appeal. (Pet., Ground 3.) Regardless of Mr. Colbert's unfamiliarity with an audio forensics expert, since at least 2013, and perhaps even during trial, Gustafson has maintained the belief that the recording was altered. He was free to locate an expert prior to the expiration of the habeas filing deadline.

The Court finds that none of these instances demonstrate a state impediment, in violation of the Constitution or laws of the United States, to the timely filing of a habeas petition under § 2244(d)(1)(B).

Finally, Petitioner relies on *Earl*, 556 F.3d at 726 n.5, for the proposition that an evidentiary hearing is required if a petitioner alleges a state-imposed impediment to filing a habeas petition. (Objs. at 12–13.) *Earl* does not stand for such a proposition. In *Earl*, the petitioner unsuccessfully asserted a lack of access to his case file as an impediment, and also alleged that the state had failed to timely notify him when his conviction had

become final. 556 F.3d at 726–28. Because the district had not made findings of fact on the second point, the Eighth Circuit remanded this issue to the district court to develop findings of fact. *Id.* at 728. The Eighth Circuit did *not require* an evidentiary hearing, leaving the means of factfinding to the district court's discretion:

> We leave it to the district court to determine whether a courtroom hearing need be conducted or whether the record can best be developed by use of the mails or telecommunication. The district court should make findings on what mechanism the state of Minnesota relied on to send notice to Earl, what actually happened to delay notice, and when Earl actually received notice that his judgment had become final.

*Id.* No hearing is required here.

### b. Factual Predicate Discovered Through Due Diligence

Although Gustafson did not expressly plead it, he appears to argue that pursuant to § 2244(d)(1)(D), the filing deadline should run from a later date based on the discovery of the factual predicates of his claims. (*See* Objs. at 8) ("This forensic evidence has been discovered by Gustafson since his sentence became final"); *id.* ("Looking at Exhibits F–K, this court can see that after Gustafson's sentence became final, he was in communication with his trial counsel, Jill Brisbois, in regards to Gustafson obtaining all of the recordings in regards to the trial, and to obtain his file from the trial as well."), *but see* (*id*. at 11) ("Gustafson has put forward two grounds for getting past a time bar. The first issue is manifest injustice/actual innocence exception . . . and that the state, over years [sic] impeded Mr. Gustafson['s] ability to file a timely habeas action as Gustafson was given the 'run around' in regards to his ability to obtain his criminal files discovery information.").

As noted, under § 2244(d)(1)(D), the limitations period may run from "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Magistrate Judge Wright found that the factual predicates for Gustafson's habeas claims were known to him well before his conviction became final. (R&R at 3 & n.1.)

The Court agrees with Magistrate Judge Wright. The magistrate judge observed that Grounds One and Two of the Petition refer to the adequacy of Gustafson's trial counsel, which would have been known to him at the time of trial. (*Id.*) Likewise, she noted that the adequacy of his appellate counsel, which is the basis for Ground Five of his Petition, would have been known to him at the time of his direct appeal. (*Id.*)

The evidence supporting his claims of false evidence and the late delivery of discovery from the prosecution, in Grounds Three and Four of his Petition, would have been known to him at trial, or during the filing of his direct appeal. Gustafson specifically points to the March 2017 forensic examination of an audio recording of a controlled purchase of a gun that was used at his 2012 trial. But, as noted, he formed a belief about alterations or edits to the recording during his trial or shortly thereafter, since he unsuccessfully raised the issue in his 2013 direct appeal. *Gustafson*, 2013 WL 4404241, at *7. The recording was evidence at trial relevant to one of the two counts of conviction for being an ineligible person in possession of a firearm. But assuming that the forensics report is accurate, the significance of the edits or alterations is unclear, as the report predominantly reflects recording gaps. (*See* Ex. C (Immure Records Report at H-2–H-5).) Although Gustafson objects to the magistrate judge's finding that Gustafson is "light on

specifics" as to how this recording incriminated him, (Objs. at 3) (citing R&R at 5), the Court agrees with her finding. And as the Court discusses in more detail below, Gustafson acknowledges that apart from this recording, the person who made the controlled buy and an investigating officer both testified at trial, implicating Gustafson in this gun purchase. (Pet'r's Actual Innocence Mem. at 4; *see also* Pet'r's § 2254 Mem. at 19.)

Even without a forensics report, Gustafson could have asserted the factual predicate for this claim earlier, particularly given his longstanding argument about edits or alterations. *See Earl*, 556 F.3d at 725–26 (finding delayed limitations period not applicable under § 2244(d)(1)(D) to allow a habeas petitioner to gather every piece of evidence that might support his claim). He could have timely tied the significance of the edits to the count of conviction, addressing this evidence and the other evidence before the jury on this count. The Court does not find that the forensics report constitutes new evidence of a factual predicate under § 2244(d)(1)(D), delaying the starting point of the statute of limitations

Accordingly, Gustafson's Objections and his exhibits fail to demonstrate the presence of a new factual predicate discovered through the exercise of due diligence that would alter the filing deadline for a habeas petition.

### 2. Equitable Tolling

Because § 2244(d) is not a jurisdictional bar, but is a statute of limitations, a habeas petitioner may be entitled to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). Equitable tolling is available only if a petitioner shows that: (1) he has diligently pursued his rights; and (2) some extraordinary circumstance beyond his control prevented

timely filing. *Nelson v. Norris*, 618 F.3d 886, 892 (8th Cir. 2010) (citing *Holland*, 560 U.S. at 649). Gustafson fails to meet these two prerequisites. Accordingly, as a general matter, equitable tolling is unavailable. *See McQuiggin v. Perkins*, 569 U.S. 383, 400 (2013) (affirming that equitable tolling was unavailable to the petitioner, but remanding matter to district court to consider actual-innocence claim, and whether untimeliness bore on the credibility of evidence).

### 3. Actual Innocence

In very limited circumstances, a claim of actual innocence can overcome the AEDPA's one-year statute of limitations. *Id.* at 394, 398–99. Gustafson asserts that he has sufficiently shown that a miscarriage of justice will result if his Petition cannot override the AEDPA's limitations period, based on his claim that he is actually innocent of the crimes for which he was convicted. (*See* Pet'r's § 2254 Mem. [Doc. No. 3] at 49–52.)

While the terms "miscarriage of justice" and "actual innocence" are often used interchangeably, not every miscarriage of justice claim involves an assertion of actual innocence. In *McQuiggin*, the Supreme Court has held that "actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." 569 U.S. at 386. However, "tenable actual-innocence gateway pleas are rare," *id.*, and "the gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 401 (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)). This is a "demanding" standard, *id.*, and "a petitioner does not meet

16

the threshold requirement unless he persuades the court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 386 (quoting *Schlup*, 513 U.S. at 329).

Here, Magistrate Judge Wright found that Gustafson failed to make a sufficient showing of actual innocence, noting that some of the factors that he cited in support of his innocence, such as a witness who was compelled to testify under a grant of immunity, are unrelated to the question of whether Gustafson committed the crimes for which he was convicted. (R&R at 4.) She also found that the remainder of his actual-innocence argument essentially consisted of speculation that had his trial counsel performed a more exacting cross examination, and more fully investigated witnesses and called them to testify, the testimony would have tended to support a verdict that he was not guilty of the offenses of conviction. (*Id.* at 4–5) (citing Pet'r's § 2254 Mem. at 50–52)). This, she found, fell far short of showing that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." (*Id.* at 5) (citing *Schlup*, 513 U.S. at 329).

In his Objections, Gustafson argues that the magistrate judge applied the incorrect legal standard to evaluate the sufficiency of his claims. (Objs. at 2–3.) Relying on *Schlup*, 513 U.S. at 323, 336, he contends that the less stringent legal standard set forth in *Murray v. Carrier*, 477 U.S. 478 (1986), applies. (*Id.*) In *Carrier,* decided a decade before the enactment of the AEDPA, the Supreme Court observed that "in an extraordinary case," a habeas petitioner, lacking a showing of cause for procedural default, may be able to show that a constitutional violation "probably resulted" in the conviction of an actually innocent person in order to overcome procedural default. 477 U.S. at 495–96.

### a. Legal Standard

The magistrate judge applied the correct legal standard for actual innocence.  As noted, in *McQuiggin*, the Supreme Court held that an actual-innocence gateway petitioner "'does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329).  The evidence the petitioner offers must be "so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."  *Id.* at 401 (citing *Schlup*, 513 U.S. at 316).  *McQuiggin*, issued in 2013, is the controlling authority, whereas *Carrier* and *Sawyer v. Whitley*, 505 U.S. 333 (1992), on which Petitioner relies, pre-date the 1996 passage of the AEDPA.  Moreover, to the extent that Gustafson distinguishes the applicable legal standard based on whether the actual-innocence petitioner is challenging the imposition of the death penalty versus challenging constitutional errors, (*see* Objs. at 2–3), the Court notes that *McQuiggin* did not involve the death penalty.

### b. Evidence

The Court therefore considers the evidence that Gustafson submits in support of his claim of actual innocence.  While Gustafson alluded to certain evidence in his filings before the magistrate judge, he has since filed the evidence, which is now before the Court.  (*See* Exs. A–M.)   As discussed below, the Court finds that none of this evidence opens the actual innocence gateway, which requires showing that, in light of this evidence, no juror, acting reasonably, would have voted to find Gustafson guilty beyond a reasonable doubt.

*McQuiggin*, 569 U.S. at 386. In sum, Gustafson's Petition fails to present "'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* at 401 (quoting *Schlup*, 513 U.S. at 316).

### i.     Laymon Affidavit

Gustafson submits an April 28, 2019 affidavit from Charlie Laymon in support of his claim of actual innocence. (Ex. A (Laymon Aff.).) Laymon describes his involvement in committing arson on April 20, 2006, at the behest of a man named Troy Neuberger, and states that at no time "did he ever receive orders from Joseph Gustafson Sr. to commit any criminal activity [whatsoever], or from any Gustafson family [whatsoever]." (*Id.* ¶ 3; *see also* ¶ 5.) He further states that while in custody, a state investigator, John Billington, interviewed him about his involvement in the arson. (*Id.* ¶ 5.) Laymon contends that he told the investigator that he and Neuberger committed the crime, but not at the direction of Joseph Gustafson, Sr., or any member of the Gustafson family. (*Id.*) Some time later, Billington and a Hennepin County District Attorney, Amber Hawkins, interviewed Laymon about the arson. (*Id.* ¶ 6.) Laymon asserts that Ms. Hawkins asked him how he would like to be serving a 15-year sentence with the Gustafsons. (*Id.*) Thereafter, Laymon states that he "agreed to change his statement to read that Joseph Gustafson Sr. did in fact order this affiant to burn down the house." (*Id.*)

This "new evidence" fails to meet the actual innocence standard for several reasons. Notably, it appears to be irrelevant to Gustafson, Jr.'s convicted offenses. Petitioner fails to indicate how Laymon's prior statement was used against him nor does he identify the

convicted offense to which it relates. Assuming that Petitioner finds it relevant to his racketeering conviction, although Gustafson's father was convicted of aiding and abetting first-degree arson, *see Gustafson*, 2013 WL 1705029, at *1, Petitioner was not convicted of this offense, nor was he charged with it. Therefore, it does not appear to have been an underlying predicate offense for purposes of Petitioner's racketeering conviction.[4]

Further, Gustafson's assertion that Laymon "changed his story" to implicate Gustafson, Sr. because the prosecutor mentioned a possible sentence, is again "unrelated to the question of whether Gustafson[, Jr.] committed the crimes for which he was convicted," and suggests nothing about Gustafson, Jr.'s guilt. (*See* R&R at 4.) Gustafson objects to the magistrate judge's finding in this regard, arguing that where a witness is "framed" to give false testimony, this fact bears on guilt or innocence. (Objs. at 13.) Here, however, the Laymon Affidavit does not suggest that Laymon was framed or coerced into giving false testimony—testimony that would appear to be irrelevant to Gustafson's conviction, in any event. This "new evidence" does not support a claim of actual innocence.

---

[4] Moreover, in Gustafson, Sr.'s direct appeal, the Minnesota Court of Appeals found the testimony of Troy Neuberger that Gustafson, Sr. ordered him to set the fire was corroborated by evidence collected by a Minnesota Department of Commerce investigator, and was sufficient to support the jury's finding of Gustafson, Sr.'s guilt on the offense. *Gustafson*, 2013 WL 1705029, at *4. Here, in addition to the fact that the aiding-and-abetting arson charge appears to be irrelevant to Gustafson, Jr.'s conviction, whether Charlie Laymon received orders from Gustafson, Sr. to commit arson would appear to be of limited significance, given that Neuberger testified that Gustafson, Sr. told him to burn the house, *id.*, and Neuberger then asked Laymon to assist him. (Ex. A (Laymon Aff.) ¶ 1.)

## ii.    Chamberlain Affidavit

Gustafson also submits an affidavit from "Greg Chamberlain's personal care assistant." (Ex. B (Chamberlain Aff.).)    Apparently, Chamberlain associated with Gustafson in the past, and because he is currently disabled, a personal care attendant transcribed the handwritten affidavit on his behalf.  (*See id.*)  In the affidavit, Chamberlain states that he did not sell cocaine to a person named Charles Pratt, nor does Chamberlain use cocaine.  (*Id.*)

Gustafson represents that this affidavit relates to Count 7 of the state court complaint, which charged Gustafson with aiding and abetting a third-degree narcotics sale that occurred on or about April 3, 2009.   (*Id.*;  Pet'r's § 2254 Mem. at 18.)  Prior to that time, Gustafson states that a friend, Charlie Pratt, had become an informant and was making controlled buys of drugs and weapons from Gustafson.  (Pet'r's § 2254 Mem. at 17.)  It appears that some of the controlled drug purchases formed the basis for the narcotics charges against Gustafson.  (*See id.* at 17–19.)

Through the Chamberlain Affidavit, Gustafson appears to argue that the underlying April 3, 2009 sale did not occur, and that "Chamberlain was never charged with 3rd degree sales while Gustafson was charged with aiding and abetting 3rd degree sales, and convicted of 3rd degree sales, for Chamberlain selling Pratt the cocaine."  (Pet'r's Actual Innocence Mem. at 3; Forward to Ex. B[5]; *see also* Pet'r's § 2254 Mem. at 27, 32.)

This evidence fails to meet the actual innocence standard.  While Chamberlain

---

[5] Gustafson prefaces each exhibit with an explanatory page, or "Forward."

asserts that he did not sell cocaine to Pratt, Gustafson himself acknowledges that "Pratt said that on April 3, 2009, he made arrangements with Gustafson to buy an eight-ball of cocaine at Greg Chamberlain's house. The police drove him to Chamberlain's house and then dropped him off. Pratt went to Chamberlain's house and bought cocaine." (Pet'r's § 2254 Mem. at 18.) He acknowledges that police tested and weighed the substance, identifying 2.68 grams of cocaine. (*Id.*) The information in the Chamberlain Affidavit does not refute Gustafson's involvement in the sale—Chamberlain merely disavows that *he* sold the cocaine.

"It is true that a person may not be convicted of aiding and abetting a crime if no crime was committed." *State v. Martynyuk*, No. A18-0397, 2018 WL 6273099, at *3 (Minn. Ct. App. Dec. 3, 2019), *review denied*, (Minn. Feb. 27, 2019) (citation omitted). Given Gustafson's account of Pratt's statements, there was evidence from which a jury could reasonably find that Pratt had "made arrangements" with Gustafson to buy the eight ball of cocaine, and that a sale occurred. (See Pet'r's § 2254 Mem. at 18.) Chamberlain's affidavit does not state otherwise. (*See* Ex. B (Chamberlain Aff.).)

Moreover, while Gustafson claims that Chamberlain was never charged with a third-degree narcotics offense, under Minnesota law, "a person may be convicted of aiding and abetting an offense even though no other person is convicted of the offense." *Martynyuk*, 2018 WL 6273099, at *3 (citing aiding-and-abetting statute, Minn. Stat. § 609.05, subd. 4). Regardless of whether the conviction was for aiding and abetting or third-degree narcotics sale, the fact that others were not charged or convicted is not evidence of Gustafson's actual innocence. A prosecutor's decision about whether to prosecute, and

22

whom to prosecute, on what charges is a discretionary matter, absent evidence of an improper motive to discriminate against a protected class. *Janssen v. 2012 Harley Davidson Motorcycle*, No. A18-1015, at *2 (Minn. Ct. App. Aug. 19, 2019) (quoting *State v. Herme*, 298 N.W.2d 454, 455 (Minn. 1980)). There is no such evidence here.

The Chamberlain Affidavit fails to support Gustafson's claim of actual innocence, and the fact that Chamberlain was not charged for a third-degree narcotics sale is irrelevant to the question of Gustafson's actual innocence.

### iii.    Forensics Report re: Audio Recording

Gustafson objects to the magistrate judge's finding that Gustafson failed to show actual innocence by alleging that a recording was altered by law enforcement and used to incriminate him. (*See* R&R at 5.) Gustafson asserts that the magistrate judge "apparently, failed to review the forensic evidence," (Pet'r's Actual Innocence Mem. at 4), but it does not appear that Gustafson filed the forensics report, or any his "new evidence," prior to the issuance of the R&R.

Gustafson has now submitted a written report from Nathan Clark, Audio Engineer/Forensics Audio Examiner at Immure Records, concerning the "audio authenticity checking" of a recording of a controlled gun purchase. (Ex. C (Immure Records Report), & Forward to Ex. C.) As noted earlier, this report relates to one of two counts of conviction for possession of a firearm by an ineligible person, in Count 10 of the state court complaint. (Objs. at 3.) Mr. Clark concludes that the recording has been edited and/or manipulated, and identifies sections of the recording and the type of edit, such as splices or gaps, loss of background noise, and so forth. (Ex. C (Immure Records Report)

at H-2–H-5.)   Gustafson emphasizes a portion of the report that identifies "[v]ery inconsistent background drop outs and erratic speech going into new recording" at 33:53–34:03.  (Pet'r's Actual Innocence Mem. at 4.)  He contends that "[t]hese specific citations to the altered recording for count #10 . . . should go a long way in countering the [R&R]'s apparent confusion as to how Gustafson, precisely, showed that recording to be false." (Objs. at 4.)

> In Gustafson's own recounting of Count 10, he states:
>
> On April 22, 2009, Gustafson brought a Sig Saur .40 caliber gun to Pratt's house; Gustafson wanted Pratt to hold it for him, but Pratt refused.  On April 27, 2009, Pratt and Gustafson went to Jesse Hoff's residence to purchase a gun.   There was some discussion about who would grab the gun and eventually Pratt grabbed the Sig Saur .40 caliber from a closet.

(Pet'r's § 2254 Mem. at 19.)  He also notes that Sergeant O'Rourke and Charlie Pratt both testified about the gun sale to which this recording relates.  (Pet'r's Actual Innocence Mem. at 4.)

This report, showing that a recording was edited, does not rise to the level necessary to support a showing of actual innocence. Gustafson asserts that the altered recording "underscores the task[] force's egregious police conduct to gain a conviction in 'bad faith.'"  (Pet'r's § 2254 Mem. at 51.)  He contends that the altered recording prejudiced him "in the sense that the Hennepin county drug task force was acting in 'bad faith,' and was egregious police conduct prejudicial to the defendant."  (*Id.* at 33) (discussing recording in context of ineffective assistance of counsel claim).   While Gustafson's arguments might go to the merits of a false evidence claim, the question here, however, is whether this evidence is so strong that in light of it, "'no juror, acting reasonably, would

have voted to find him guilty beyond a reasonable doubt.'" *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 329). This written forensics report does not meet that standard with respect to the gun possession charge in Count 10.

### iv. Newspaper Articles re: Metro Gang Strike Force

Gustafson also submits several Star Tribune articles from 2012 and 2018 concerning settlements in civil lawsuits involving raids and excessive force claims brought against the Metro Gang Strike Force, and general police misconduct claims, as well as articles from 2018 concerning the Hennepin County Attorney's Office's dismissal of 32 cases resulting from evidence that an Eden Prairie detective had falsified a search warrant. (Ex. D (News Articles).) Gustafson argues that these articles "speak[] volumes to the integrity of the investigation and evidence against Gustafson[.]" (Pet'r's § 2254 Mem. at 51.) He contends that based on "a proven pattern of egregious police conduct *after* Gustafson's conviction," it would be reasonable for the Court to find that "the task force was acting in 'bad faith' at the time it investigated him as well." (*Id.* at 51–52.)

Nothing in these articles pertains to Gustafson's case, nor does he contend that the Eden Prairie detective was involved in his case. Generalized reports of police misconduct in other cases do not meet the standard required for actual innocence.

### B. Dismissal of Respondent Keith Ellison

Gustafson also objects to the magistrate judge's recommendation to dismiss Minnesota Attorney General Keith Ellison as a respondent in this suit. Gustafson contends that Ellison should not be dismissed, arguing that the constitutionality of a Minnesota statute is it issue. (Objs. at 5; Mot. for Assertion of Minn. R. 144 [Doc. No. 12] at 1–3.)

Specifically, he asserts that "[t]he Statute of Limitations is what [Petitioner] is requesting review of for Racketeering Minn. Stat. 609.903." (Mot. for Assertion of Minn. R. 144 at 1.) Because of Gustafson's apparent challenge to this Minnesota statute, he believes that the Minnesota Attorney General is a proper respondent. (*Id.* at 2.)

First, a challenge to the constitutionality of Minnesota's racketeering statute is not one of the grounds of relief that Gustafson asserts in his habeas Petition. Second, as the magistrate judge explained, the proper respondent to a habeas corpus proceeding is the official with immediate custody of the prisoner. (R&R at 5–6) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004)). Regardless of Gustafson's desire to challenge the constitutionality of a state statute, which he did not raise in his Petition, the Petition is untimely and Attorney General Ellison is not a proper respondent in this suit. Accordingly, Petitioner's objection to this portion of the R&R is overruled and Attorney General Ellison is dismissed from this action.

### C. Evidentiary Hearing

A habeas petition brought under § 2254 does not require an evidentiary hearing unless the applicant can show that: (1) the claim relies on (a) a new rule of constitutional law, previously unavailable, that the Supreme Court has made retroactive to cases on collateral review; or (b) a factual predicate that could not have been discovered earlier through due diligence; *and* (2) "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense." 28 U.S.C. § 2254 (e)(2)(A)–(B) (emphasis added).

Gustafson's claims do not rely on a new rule of constitutional law, made retroactive to cases on collateral review. And, as the Court has noted, the factual predicates underlying his claims were known to him earlier. Nor does the Court find that the facts underlying his claims would be sufficient to establish, by clear and convincing evidence, that but for a constitutional error, no reasonable factfinder would have found him guilty of the underlying offenses in question. Accordingly, there is no basis for granting an evidentiary hearing on his Petition and any such request is denied.

### D.  Certificate of Appealability

As to Gustafson's Motion for a Certificate of Appealability, which is necessary for a movant to appeal an adverse decision on a 2254 motion, *see* 28 U.S.C. § 2253(c)(1)(B), a court cannot grant a Certificate of Appealability unless the applicant has made "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(3). This Court has considered whether the issuance of a certificate is appropriate here and finds that no issue raised is "debatable among reasonable jurists." *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994) (citing *Lozada v. Deeds*, 498 U.S. 430, 432 (1991) (per curiam)). Accordingly, the Court declines to issue a certificate of appealability.

### E.  Motions for Discovery and Assertion of Minnesota Rule 144

Because this action was untimely filed, the Court denies as moot Petitioner's Motion for Discovery [Doc. No. 2] and Motion for Assertion of Minnesota Rule 144 [Doc. No. 12].[6]

---

[6] The Court notes that the magistrate judge recommended that these motions be denied. (R&R at 7.) Because these motions are technically rendered moot by the dismissal of

**F.  Motion for IFP Status**

Finally, Gustafson has applied to proceed in District Court without paying fees or costs due to his *in forma pauperis* status.  (IFP Application at 1–6.)  Although Gustafson appears to financially qualify for such relief, because the Court is dismissing this District Court action, it denies his request as moot.

**III.    CONCLUSION**

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that

1.    The Report & Recommendation [Doc. No. 15] is **ADOPTED, as modified**.

2.    The Petition for a Writ of Habeas Corpus of Petitioner Joseph Duane Gustafson, Jr. [Doc. No. 1] is **DISMISSED WITH PREJUDICE** as untimely.

3.    Gustafson's Actual Innocence Motion [Doc. No. 22] is **DENIED**;

4.    Respondents' Motion to Dismiss Keith Ellison [Doc. No. 6] is **GRANTED**.

5.    Gustafson's Motion for Discovery [Doc. No. 2] is **DENIED AS MOOT**.

6.    Gustafson's Motion for Assertion of Minnesota Rule 144 [Doc. No. 12] is **DENIED AS MOOT**.

7.    Gustafson's Motion for a Certificate of Appealability [Doc. No. 20] is **DENIED**, therefore, no certificate of appealability shall be issued.

8.    An evidentiary hearing is **DENIED**.

---

Gustafson's Petition, the Court adopts the R&R, as modified in this regard, i.e., denying these two motions as moot.

9.      Gustafson's Application to Proceed in District Court Without Prepaying

Fees or Costs [Doc. No. 26] is **DENIED AS MOOT**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED: February 14, 2020                    s/ Susan Richard Nelson_
                                            SUSAN RICHARD NELSON
                                            United States District Court Judge